**APEX OIL COMPANY,**
**Plaintiff–Appellee,**

v.

**The BELCHER COMPANY OF NEW YORK, INC. and Belcher New Jersey, Inc., Defendants,**

**Shea & Gould, Appellant.**

**No. 745, Docket 87–7932.**

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1988.

Decided Aug. 30, 1988.

Milton S. Gould, New York City, for appellant pro se Shea & Gould.

Debra L. Brown, New York City (Richard J. Wiener, Cadwalader, Wickersham & Taft, New York City, of counsel), for plaintiff-appellee Apex Oil Co.

Before TIMBERS, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

This appeal requires us to consider several issues concerning a district court's power to sanction attorneys for abuses during pretrial discovery. We address whether Fed.R.Civ.P. 37(c) permits the imposition of sanctions on a law firm for its clients' failure to admit certain statements contained in requests for admission, whether sanctions may be imposed for failing to prove composite paraphrases of requests for admission, and whether sanctions under 28 U.S.C. § 1927 (1982) may be awarded for failing to confer in good faith over disputes arising in discovery.

The law firm of Shea & Gould appeals from Judge McLaughlin's orders imposing monetary sanctions on it for alleged abuses during pretrial discovery in a suit against its client, The Belcher Company of New York, Inc., and Belcher New Jersey, Inc. (together "Belcher"). Specifically, the district court, under Fed.R.Civ.P. 37(c), ordered Shea & Gould to pay $10,469.25 in sanctions to the plaintiff in the action, Apex Oil Company ("Apex"), for Belcher's failure to admit the truth of various matters contained in requests for admission. The district court further directed Shea &

Gould to pay $7,171.25 under 28 U.S.C. § 1927 (1982) for the costs incurred by Apex as a result of Shea & Gould's tactic of requiring plaintiff to make a motion to compel discovery before voluntarily providing the requested information. We reverse the imposition of Rule 37(c) sanctions as to these matters because such sanctions cannot be imposed against a party's attorney. We also hold that sanctions cannot be imposed under Rule 26(g) for the failure to admit a composite paraphrase of several requests for admission. Rather, sanctions must be based on the specific requests for admission as actually made. We remand for a recalculation of sanctions under Rule 26(g) with regard to one request for admission, however. At the same time, we affirm the district court's imposition of sanctions under Section 1927.

## BACKGROUND

The litigation underlying this appeal involved an acrimonious commercial dispute between Apex and Belcher, the merits of which are the subject of another decision filed this day, *Apex Oil Co. v. Belcher Company of New York*, 855 F.2d 997 (2d Cir.1988), familiarity with which is assumed. Briefly, Apex claimed that Belcher had committed fraud by inducing Apex to provide a price concession to Belcher for 142,000 barrels of heating oil that Apex had delivered to Belcher, and that Belcher breached its contractual obligation to Apex by refusing to accept the remaining 48,000 barrels of oil provided for in the contract. Belcher's principal defense was that Apex had breached the contract by delivering oil that did not conform to the specifications of the contract. A jury rendered a verdict for Apex in the amount of $432,365.04. We reverse that judgment in our companion decision.

Discovery in this case was extensive and contentious. On November 20, 1985, Apex served upon Belcher its first request for admissions pursuant to Rule 36. In its response dated December 20, 1985, Belcher objected to more than one-half of Apex's ninety-one requests on the various grounds that they were "vague and argumentative"

(35 requests), "improperly called upon defendants to admit a question of law" (5 requests), referenced documents that "speak for themselves" (25 requests), and were irrelevant (1 request). The parties made several attempts to resolve their differences over the admissions. On January 2, 1986 defense counsel advised Apex to file a motion to compel if it deemed the responses unacceptable. On January 3, Apex's counsel reviewed each response with Belcher's counsel, describing why plaintiff believed the responses inadequate and informed Belcher's counsel that Apex intended to file a motion to compel on January 6. Immediately prior to Apex's filing of the motion on that date, defense counsel informed Apex's counsel that the defendants intended to file supplemental responses to twelve of the requests, provided that the term "Belcher" was redefined as defense counsel suggested. Apex agreed to the redefinition. On January 7, still dissatisfied with Belcher's unwillingness to supplement more than twelve of the responses, Apex filed a motion to compel with Magistrate Caden who supervised discovery in this matter. Belcher opposed the motion, in part on the ground that the definition of Belcher contained in the requests for admission was objectionable, a matter that had already been resolved. Belcher also noted that Apex "has ample sanctions after trial in the event we are wrong." Although the motion was never decided, Belcher did file supplemental responses on January 9 and January 21.

The parties also engaged in hard-fought disputes over document production. On October 30, 1985, Apex filed a motion to compel the production of documents based on two earlier unsatisfied document demands. Apex claims that it was forced to file a motion to compel because Belcher had unnecessarily delayed production for five months and had supplied only a small number of the requested documents. Shea & Gould responds that the motion principally sought not the production of documents, but rather the identification of documents that Apex had produced in a different litigation between the parties. Shea & Gould concedes, however, that Belcher ultimately

agreed to Apex's request after the motion to compel was filed.

The final discovery dispute concerned the identification of Belcher's expert witness. On September 19, 1985, Apex served interrogatories seeking the identification of Belcher's expert witness under Rule 26(b)(4). Shea & Gould responded that it "ha[d] not yet selected the expert witness or witnesses whom it intend[ed] to call at the trial of this action." Approximately three weeks prior to trial, defense counsel represented to Apex that Belcher did not intend to call an expert witness. Shortly thereafter, on January 15, 1986, defense counsel switched positions and informed Apex's counsel that Belcher "may" call an expert witness. On the morning of January 17, in a conversation regarding the exchange of witness lists for the pretrial order, defense counsel told Apex's counsel that Belcher would not identify an expert on their list, but would "reserve the right" to do so later. Apex then filed a motion dated January 17 to compel identification of Belcher's expert. On the afternoon of January 17, in a conference call with Magistrate Caden, defense counsel agreed to provide information about its expert. Shea & Gould claims that it was unaware of Apex's motion to compel and that it had not retained an expert until just prior to the conference call. The expert affirmed that he was hired only on the afternoon of January 17.

After the jury's verdict, Apex moved against Belcher and Shea & Gould for sanctions pursuant to, *inter alia*, Fed.R.Civ.P. 11, 30(g), 36 and 37(c), 28 U.S.C. § 1927, and the district court's inherent equitable powers. On March 20, 1987, Judge McLaughlin granted the motion in part and denied it in part. Specifically, he ruled that Shea & Gould should be sanctioned under Rule 37(c) for failing to admit four factual matters. Apex had sought sanctions for four additional factual matters that the district court determined were not properly sanctionable.

In addition, the district court awarded sanctions under 28 U.S.C. § 1927 for attorney's fees, costs and expenses incurred by Apex in moving to compel the production of documents, supplemental responses to requests for admissions and the identification of Belcher's expert witness. The district court "discern[ed]" that Shea & Gould had followed a "tactic" of first advising plaintiff's counsel to make a discovery motion and "[w]hen they did so, defense counsel mysteriously changed their minds and complied with the requests." Plaintiff's counsel, the district court found, had attempted to "resolve the matter informally" as required under Local Rule 6(a) of the Standing Orders of the Court on Effective Discovery in Civil Cases in the United States District Court for the Eastern District of New York. Shea & Gould's failure to comply with plaintiff counsel's "reasonable requests" under these circumstances, according to the district court, established the bad faith required under Section 1927 and was "precisely the kind of conduct section 1927 [was] designed to deter." The district court set the amount of sanctions against Shea & Gould at $10,469.25 under Rule 37(c), and $7,171.25 under Section 1927. No sanctions were awarded against Belcher, although Apex had made its motion for sanctions under Rule 37(c) only against Belcher and not against Shea & Gould. We need not examine the basis for determining the amount of sanctions because Shea & Gould does not contest the size of the award.

## DISCUSSION

1. *Sanctions Concerning Requests for Admissions*

■ The district court imposed sanctions against Shea & Gould under Fed.R.Civ.P. 37(c) for Belcher's failure to admit four factual statements. On appeal, Shea & Gould claims that Rule 37(c) does not permit sanctions against a party's attorney. We agree.

Rule 37(c) provides, in pertinent part:

*Expenses on Failure to Admit.* If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the doc-

ument or the truth of the matter, the requesting party may apply to the court for an order *requiring the other party* to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit.

Fed.R.Civ.P. 37(c) (emphasis added). By its express terms, Rule 37(c) applies only to a party. *See also* Fed.R.Civ.P. 37(c) advisory committee's note to 1970 amendment ("Rule 37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial."); J. Moore, J. Lucas & D. Epstein, 4A *Moore's Federal Practice* ¶ 37.04, at 3796 (1987) (Rule 37(c) precludes imposition of sanctions against party's attorney).

Moreover, we must infer from the other subsections of Rule 37 expressly providing for the imposition of sanctions against a party's attorney that the drafters intended to omit attorneys from the coverage of subsection (c). For example, Rule 37(a)(4), which permits the district court to award sanctions to the prevailing party on a motion to compel discovery, expressly states that if such a motion is granted, the "attorney advising [the] conduct" may be sanctioned, and that if such a motion is denied, "the attorney advising the motion" may be sanctioned. Similarly, Rule 37(d), which concerns a party's failure to attend a deposition or answer an interrogatory, expressly provides that "the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses ... caused by the failure." Finally, Rule 37(g), which involves the failure of a party or the party's attorney to participate in the framing of a discovery plan, expressly provides for sanctions against the "party or attorney."

The only case cited by Apex for the proposition that Rule 37(c) sanctions may be imposed against an attorney, *Dorey v. Dorey*, 609 F.2d 1128 (5th Cir.1980), is hardly dispositive. In *Dorey*, the Fifth Circuit never reached the question of whether Rule 37(c) sanctions can be imposed against an attorney, and addressed only whether the district court could award Rule 37 sanctions absent a court order compelling discovery. *Id.* at 1134–35. Moreover, in *Akins v. McKnight*, 13 F.R.D. 9 (N.D.Ohio 1952), the district court rejected a request under Rule 37(c) for sanctions against counsel, specifically noting that "Rule 37(c) provides for the assessment of expenses in a proper case only against a person serving sworn denials [a party]. The sanction of the Rule is a drastic one and should not be extended beyond its terms." *Id.* at 11.

■ We decline to adopt Apex's suggestion that we construe Rule 37(c) broadly in order to fill a so-called "gap" in the federal rules. Indeed, we note that Apex never sought sanctions against Shea & Gould under Rule 37(c) in the district court, and its arguments here are after-the-fact attempts to justify the district court's actions. In any event, whatever gap exists is small, for district courts have the power under Rule 26(g) to sanction attorneys who fail to respond properly to requests for admissions under Rule 36.

Because the sanctions imposed by Judge McLaughlin may be justified under Rule 26(g), we consider the applicability of that Rule to the instant case. *See In re Sutter*, 543 F.2d 1030, 1032 n. 1 (2d Cir.1976) (order imposing sanctions "must be upheld if there is any basis upon which it can be justified"); *see also Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970) ("The prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court."). Rule 26(g) provides that all discovery requests, responses and objections must be signed by the party's attorney or by the party if pro se. The Adviso-

ry Committee's Note expressly states that "[t]he term 'response' includes answers ... to requests to admit." Fed.R.Civ.P. 26(g) advisory committee's note to 1983 amendment.

■ Under Rule 26(g), an attorney's signature constitutes a certification that he or she

> has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

Fed.R.Civ.P. 26(g). In interpreting Rule 26(g), district courts should look to our caselaw under Rule 11. *See* Fed.R.Civ.P. 26(g) advisory committee's note to 1983 amendment (Rule 26(g) "parallels the [1983] amendments to Rule 11" and attorney's compliance with Rule 26(g) is measured by "objective standard similar to the one imposed by Rule 11"). Nevertheless, Rule 26(g) imposes a more stringent certification requirement than Rule 11 by requiring that the signer certify that the request, response or objection is: "(1) consistent with these rules ... and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation." Fed.R. Civ.P. 26(g). This additional strictness is necessary because a "discovery request, response, or objection usually deals with more specific subject matter than motions or papers [governed by Rule 11]." Fed.R. Civ.P. 26(g) advisory committee's note to 1983 amendment. Discovery motions, as compared to papers filed in discovery, are governed by Rule 11. *See* Fed.R.Civ.P. 11 advisory committee's note to 1983 amendment.

■ In turning to the merits of the imposition of sanctions, we first discuss the basic provision governing requests for admission, Rule 36, and its relation to the provisions for sanctions, Rules 26(g) and 37(c). Rule 36(a) provides that a party may request another party to admit matters within the scope of Rule 26(b) that "relate to statements or opinions of fact or of the application of law to fact including the genuineness of any documents described in the request." The matter is deemed admitted, unless within thirty days of the request the party to whom the request is directed serves upon the requesting party a written answer or objection concerning the matter. This response must be signed by the party or his or her attorney. The attorney's signature brings into play the sanctioning power of Rule 26(g), while Rule 37(c) applies to the party whether or not the party has signed the response.

■ Under Rule 36(a), a party cannot entirely deny a request because part of it is believed to be untrue. The Rule specifically provides that:

> A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

Fed.R.Civ.P. 36(a). The party seeking the admission may move to test the sufficiency of any response to his or her request. If the response is deemed insufficient, Rule 36(a) provides that the district court may order that the matter is deemed admitted or that a proper response be provided. Even if the party fails to make a motion under Rule 36(a), a party may recover sanctions under Rules 37(c) and 26(g).

Turning to the merits, Apex's motion for sanctions stated that "but for defendants' wrongful failure to admit, the following major *issues* would have been removed from the trial...." (emphasis added).

Apex then proceeded to list eight statements. The district court referred to these as "requests" and appears to have assumed that they were the actual, identically-worded requests for admissions made pursuant to Rule 36(a). The district court determined that Belcher should have admitted four such statements. In reality, however, three of these statements were composite paraphrases of various Apex requests.

### a. *The First and Second Statements*

In the motion for sanctions the first and second statements that the district court found Belcher should have admitted read as follows:

1. Defendants used the oil discharged off the *Bordeaux* in the ordinary course of business for routine sales to regular truck customers without suffering any actual loss or damage.

2. Defendants did not tell Apex that the *Bordeaux* oil had been used for sales to truck customers without loss or damage.

Apex informs us that these statements were composite paraphrases of Request Numbers 16, 17, 27, 41, 42, 43, 44, 45, 46 and 48. *See* Apex Br. at 6 n. 6.

The actual requests, made during discovery pursuant to Rule 36(a), were as follows:

16. At the time the Contract was negotiated, the parties contemplated that the oil would be delivered to, and disposed of in, the Boston Harbor area.

17. In Boston Harbor, in February 1982, marketable specifications for No. 2 Heating Oil included a maximum sulphur content ranging from .30% to .33%.

27. The oil from the *Bordeaux* that was stored in Tank No. 12 was used for Belcher in its routine sales to its regular truck customers.

41. On February 10, 1982, Belcher commenced use and disposition of the No. 2 Heating Oil pumped into its tanks from the *Bordeaux*.

42. Belcher used and disposed of the barrels of No. 2 Heating Oil discharged off the *Bordeaux* in the ordinary course of its business.

43. Belcher used and disposed of the barrels of No. 2 Heating Oil discharged off the *Bordeaux* in truck sales off the rack to its regular wholesale customers.

44. Belcher used and disposed of the barrels of No. 2 Heating Oil discharged off the *Bordeaux* without incurring any actual damages or expenses.

45. In February 1982, Belcher did not need, or require for use, in the Boston Harbor region, a quantity of 190,000 barrels of No. 2 Heating Oil meeting New York Harbor specifications.

46. In February 1982, Belcher did not purchase on the open market a quantity of 190,000 barrels of No. 2 Heating Oil meeting New York Harbor specifications as a substitute or replacement for the oil Belcher claims Apex should have delivered under the Contract.

48. Belcher did not, at any time during February or March 1982, advise Apex that it had not incurred damages and expenses as the result of Apex's delivery of oil containing a .25% sulphur content.

In its initial response to these requests, Belcher denied Request Number 16, objected to Request Number 17 on the ground that it "improperly calls upon defendants to admit a question of law," and objected to Request Numbers 27, 41–46, and 48 because they were "vague and argumentative."

On January 21, 1986, Belcher provided the following supplemental responses to Request Numbers 27, 41, 42 and 43:

*Request No. 27.* The oil from the *Bordeaux* that was stored in Tank No. 12 was used for Belcher in its routine sales to its regular truck customers.

*Response:* Defendants object to this request as it is vague and argumentative. Defendants further object to this request on the ground that, insofar as it refers to activities of companies or persons who are not parties to this action, it is irrelevant. However, without waiving any rights or objections, defendants deny that they used the product but admit that Belcher New England, prior and subse-

quent to February 10, 1982, utilized the contents of Tank No. 12 at its Revere terminal principally for rack sales made in the ordinary course of its business.

*Request No. 41.* On February 10, 1982, Belcher commenced use and disposition of the No. 2 Heating Oil pumped into its tanks from the *Bordeaux.*

*Response:* Defendants object to this request as it is vague and argumentative. Defendants further object to this request on the ground that, insofar as it refers to the activities of companies or persons who are not parties to this action, it is irrelevant. However, without waiving any rights or objections, defendants deny the request.

*Request No. 42.* Belcher used and disposed of the barrels of No. 2 Heating Oil discharged off the *Bordeaux* in the ordinary course of its business.

*Response:* Defendants object to this request as it is vague, argumentative and repetitive. Defendants further object to this request on the ground that, insofar as it refers to the activities of companies or persons who are not parties to this action, it is irrelevant. However, without waiving any rights or objections, defendants admit that they used the oil and paid for it as agreed upon by the parties.

*Request No. 43.* Belcher used and disposed of the barrels of No. 2 Heating Oil discharged off the *Bordeaux* in truck sales off the rack to its regular wholesale customers.

*Response:* Defendants object to this request as it is vague, argumentative and repetitive. Defendants further object to this request on the ground that, insofar as it refers to the activities of companies or persons who are not parties to this action, it is irrelevant. However, without waiving any rights or objections, defendants incorporate their supplemental response to request No. 27.

■ We do not believe that sanctions can be imposed on a party or on an attorney solely on the basis of composite paraphrases of several requests for admission. Rule 26(g) provides for sanctions against an at-

torney for failing to certify properly a response to an actual request for admission. The Rule thus speaks in terms of the signer's obligation to read the particular "request, response or objection." *See also* Fed.R.Civ.P. 26(g) advisory committee's note to 1983 amendment (Rule 26(g) "provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection"). Furthermore, Rule 37(c) specifically states that sanctions are proper "[i]f a party fails to admit ... the truth of any matter *as requested* under Rule 36" and the requesting party thereafter proves the truth of the matter. Fed.R.Civ.P. 37(c) (emphasis added).

■ Whether sanctions are sought against a party or counsel, the use of composite paraphrases of requests for admission as a basis for imposing sanctions can serve only, as here, to confuse courts and litigants over precisely which requests for admission and which responses are at issue. The composite paraphrases of the first two statements encompassed numerous requests for admission, some of which were answered, some of which were not. Sanctions should be imposed, however, for the failure to admit specific requests as actually made. This procedure will ensure that the reason for imposing sanctions is clear to both the district court and reviewing courts. The composite paraphrase employed here is designed more to muddle the issue than to focus it. We decline to engage in the unraveling necessary to determine whether any, and if so which, of the designated requests for admission was the subject of an improper response. Accordingly, we reverse the imposition of sanctions based on these statements.

b. *The Third Statement*

■ The third statement the district court determined should have been admitted was:

Prior to February 10, 1982, defendants contacted Getty, Apex' supplier, to confirm the loading of the *Bordeaux* and to

obtain information on the specifications of the oil loaded aboard the vessel.

This request was a composite of Request Numbers 22 and 23, *see* Apex Br. at 6. n. 7, which were the following:

22. Belcher was told by Apex, on or about February 5, 1982, that Belcher could contact Apex's supplier, Getty Delaware City ("Getty"), to confirm the loading of the *Bordeaux* and to obtain directly from Getty any additional information about the ship and its cargo Belcher deemed necessary.

23. Belcher did contact Getty before the *Bordeaux* got underway.

After objecting to both of these requests as "vague and argumentative," Belcher provided a supplemental response to Request Number 23 on January 21. This supplemental response is set forth below:

*Request No. 23.* Belcher did contact Getty before the Bordeaux [sic] got underway.

*Response:* Defendants object to this request as it is vague and argumentative. Defendants further object to this request on the grounds that insofar as it refers to activities of companies or persons who are not parties to this action, it is irrelevant. However, without waiving any rights or objections, defendants deny that defendants contacted anyone at Getty Oil regarding the loading of No. 2 Heating Oil at Getty Delaware City onto the *Bordeaux.* Defendants admit that someone at Belcher New England, contacted someone at Getty, probably a marketing person to confirm the fact of the loading of the *Bordeaux;* we are uncertain whether that contact was before the loading, or after.

Shea & Gould claims on appeal that this response admitted the substance of what Apex had requested. The firm also correctly points out that neither Request Number 22 nor Request Number 23 asked, as stated in the third composite, whether Belcher had actually contacted Getty "to obtain information on the specifications of the oil loaded aboard the vessel." Once again, this demonstrates the danger of relying on composite paraphrases of requests

for admissions as a basis for sanctions, and we accordingly reverse.

c. *The Fourth Statement*

■ The fourth statement that the district court determined Belcher should have admitted read:

Defendants, together with Belcher New England, were all affiliates of one another, shared common officers and employees and were dominated and controlled by Belcher Oil Company and, ultimately, by Coastal Corporation.

This paraphrase request was substantially the same as Request Number 4 which is set forth below:

4. During the period from December 1981 through March 1982, the three corporations, Belcher New York, Belcher New Jersey and Belcher New England, all of which are affiliates of one another, shared common officers and employees. All three Belchers were, at all relevant times, controlled and dominated by Belcher Oil Company and, ultimately, by The Coastal Corporation.

Belcher's response to this request was the single word, "Denied." No supplemental response was ever filed.

In opposing the Rule 37(c) sanctions for this request, Belcher claimed that it refused to respond because the request contained "loaded" terms such as "dominated" and "controlled." The district court rejected this argument, noting that Belcher had not shown "how these words are inaccurate, misleading or prejudicial." On appeal, Shea & Gould, although it does not dispute that the "defendants, together with Belcher New England, were affiliates of one another, shared common officers and employees and were owned by Coastal Corporation." Shea & Gould Reply Br. at 11–12 (quoting Apex Br. at 33) contends that Apex never proved that Belcher was "dominated and controlled" by Coastal. Shea & Gould Br. at 11. Shea & Gould also claims that this admission was not of substantial importance because the district court did not permit an award of punitive damages based on Coastal's earnings. Shea & Gould Reply Br. at 13.

As noted, the fourth statement was in substance the same as Request Number 4, and we believe we should reach the merits, although we stress that, in the future, sanctions should be imposed only with regard to actual requests for admission.

▇ Given Shea & Gould's concession that the first sentence of the request was true, the outright denial of Request Number 4 failed to comply with Rule 36(a) which requires that

A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.

Clearly, Belcher should have qualified its answer by at least admitting that the Belcher companies shared common officers and employees and were owned by Coastal. The outright denial was thus unjustified, and we need not reach the issue concerning the use of the words "dominated" or "controlled," because a denial assumes that they are factually meaningful. We remand for a determination of the amount of sanctions to be imposed under Rule 26(g) for the failure to respond accurately to this request.

### 2. *Section 1927 Sanctions*

▇ Under 28 U.S.C. § 1927, Judge McLaughlin awarded Apex the attorney's fees, costs and expenses it incurred in moving to compel complete production of documents, supplemental responses to requests for admissions, and identification of Belcher's expert witness. Shea & Gould asserts on appeal that such an award was beyond the scope of Section 1927, because that statute does not permit the award of sanctions for discovery abuse. We disagree.

Section 1927, entitled "Counsel's liability for excessive costs," permits the award of sanctions against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously...." 28 U.S.C. § 1927. As the Supreme Court has stated:

"[Section] 1927 does not distinguish between winners and losers, or between plaintiffs and defendants.... It is concerned only with limiting the abuse of court processes." *Roadway Express v. Piper,* 447 U.S. 752, 762, 100 S.Ct. 2455, 2462, 65 L.Ed. 2d 488 (1980).

In *Roadway Express,* plaintiffs' counsel had ignored discovery requests and the district court's discovery orders. *Id.* at 754–55, 100 S.Ct. at 2458. The district court eventually dismissed the action and held counsel liable for defendants' costs and attorney's fees under a "confluence of several statutes" including Section 1927. *Id.* at 756, 100 S.Ct. at 2459. In its decision, the Fifth Circuit affirmed the district court's decision to impose sanctions under Section 1927 "for the vexatious manner in which the appellants conducted the law suit." *Monk v. Roadway Express,* 599 F.2d 1378, 1381 (5th Cir.1979). The Supreme Court then upheld the Fifth Circuit's decision on liability and thereby affirmed by implication the propriety of imposing Section 1927 sanctions for discovery abuses. 447 U.S. at 767, 100 S.Ct. at 2465. The Fifth Circuit held, 599 F.2d at 1382–83, and the Supreme Court agreed, that attorney's fees were not among the excess costs that could be assessed under Section 1927, as it then read, 447 U.S. at 757, 767, 100 S.Ct. at 2459, 2465, but Congress has subsequently amended it to include attorney's fees. Moreover, other courts have held that Section 1927 applies to discovery abuses. *See, e.g., Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1446–47 (11th Cir.1985); *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 869 (3d Cir.1984).

▇ We do not pause to examine whether the federal rules provide a remedy for Belcher's failure to grant particular requests for discovery without requiring Apex to file a motion to compel. Whether or not particularized sanctions were available under Rules 37 or 26, Shea & Gould's conduct independently violated Local Rule 6(a) of the Standing Orders of the Eastern District on Effective Discovery in Civil Cases, which provides, "[p]rior to seeking

judicial resolution of a discovery dispute, the attorneys for the affected parties or non-party witness shall attempt to confer in good faith in person or by telephone in an effort to resolve the dispute." The failure to confer in good faith over discovery disputes in violation of a local rule clearly "multiplies the proceedings ... unreasonably and vexatiously," and Section 1927 thus provides ample authority for sanctions.

The district court, examining the record as a whole, determined that defense counsel had engaged in "a practice that establishe[d] the bad faith" required under Section 1927. *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986) (Section 1927 sanctions may only be imposed upon showing of bad faith). That practice consisted of, to quote the district court, "putting plaintiff to the expense of making a motion and then agreeing to the request...."

Specifically, the district court found that on three separate occasions defense counsel refused to comply with Apex's reasonable requests for admissions, document production and the identification of Belcher's expert. In each instance, prior to making its motion, Apex's counsel attempted to resolve the matter informally pursuant to Local Rule 6(a) of the Eastern District. And, in each case, the district court found, Apex's counsel was "told to make a motion." After each motion was made, defense counsel "mysteriously," in the district court's words, complied with the requests.

. We note the special role of district courts in using Section 1927 sanctions to enforce local rules requiring good faith attempts to settle discovery disputes. District courts are in a far better position than we to evaluate particular disputes over discovery and the conduct of the parties relating thereto. We therefore accord them considerable discretion in that regard. *See Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 720 (9th Cir. 1984) (imposition of sanctions under Section 1927 reviewed for abuse of discretion).

Judge McLaughlin did not exceed that discretion in determining that the conduct described above evidenced a failure to confer in good faith to settle the disputed matters.

Defense counsel's shifting positions with regard to the requests for admission caused Apex to prepare a motion and then learn that supplemental responses would be filed as to some of the requests. The redefinition of Belcher was agreed upon, but Belcher thereafter raised it as an objection in response to Apex's motion. Apex was forced to prepare and file a motion to compel that was followed by the voluntary production of documents, thereby rendering the motion superfluous. Belcher's inconstancy concerning the retention and identity of an expert also put Apex to unnecessary expense. We believe these facts support Judge McLaughlin's conclusion that Local Rule 6(a) was violated by defense counsel in a manner that "multiplie[d] the proceedings ... unreasonably and vexatiously." *See Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 181 (D.C.Cir.1980) ("advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto").

## CONCLUSION

We reverse the imposition of sanctions against Shea & Gould regarding their responses to requests for admissions except for the one that is remanded. We affirm as to the Section 1927 sanctions.