871 F.2d 1354
 14 Fed.R.Serv.3d 457, RICO Bus.Disp.Guide 7190
 INSURANCE BENEFIT ADMINISTRATORS, INC., an Illinois
corporation, Plaintiff-Appellee,
v.
Jon MARTIN, individually and d/b/a the Communicators, BiJo,
Inc., an Illinois corporation; William Mueller,
individually and d/b/a Wilkare
Typographers, Defendants,
Appeal of John W. GAVIN, one of the attorneys for Jon Martin, et al.
 No. 87-2671.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 8, 1988.
Decided April 18, 1989.
 
 James J. Gavin, Gavin & Gavin, Westchester, Ill., for appellant.
 Matthew F. Kennelly, Cotsirilos Crowley Stephenson Tighe & Streicker, Ltd., Chicago, Ill., for plaintiff-appellee.
 Before CUMMINGS, COFFEY, and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 Based on two separate requests, the district court imposed sanctions against Attorney John W. Gavin. The first sanction against Gavin was a $3,000 assessment for frivolously contesting his client's employment status. The second sanction was an assessment of more than $31,000 for various actions, relating to pretrial and trial matters, taken by Gavin. This appeal solely contests the imposition of sanctions, not the underlying RICO decision in favor of the plaintiff. Gavin appeals, claiming that both determinations that his conduct was sanctionable were erroneous. He alternatively argues that the monetary amounts of both sanctions were excessive. We affirm the grant of IBA's initial motion for sanctions and the $3,000 penalty imposed. We reverse and remand the second imposition of sanctions so that the district court may review the matter to determine whether Gavin's conduct was in fact sanctionable, and if so, under what authority sanctions should be imposed and what type of sanctions they should be.
 
 I. Background
 
 2
 Insurance Benefit Administrators, Inc. ("IBA") hired Jon Martin in January, 1982 as its Advertising/Public Relations Director. Thereafter, without the knowledge of IBA, Martin formed a corporation called BiJo, Inc. Joining with Martin to set up BiJo, Inc., was William Mueller, the owner of a typography firm used by IBA at Martin's direction. Martin then used his authority as advertising director of IBA to "hire" BiJo to act as IBA's advertising agency and to contract with printers that had agreed to pay BiJo "commissions" to do work for IBA. Over a 16-month period, BiJo received over $18,000 in these "commissions."
 
 
 3
 BiJo also did business with IBA under the name "The Communicators," placing IBA's advertising in publications. The evidence at trial established that some publications charge ad agencies less than they charge businesses which place ads directly, with the difference (about 15%) being paid to the agency as a commission. IBA also paid The Communicators for the design of promotional material. These fees through April, 1984 amounted to over $128,000.
 
 
 4
 Once it discovered this caper, IBA brought suit, charging Martin, Mueller and BiJo with several RICO violations, breach of fiduciary duty, and fraud. The defendants counterclaimed on several grounds. The jury found in favor of IBA on both the RICO and pendent state law claims and awarded damages in excess of $156,000 (after trebling) plus attorneys' fees in the sum of $63,805.
 
 
 5
 Martin initially retained another lawyer to represent him. He replaced that lawyer, however, with appellant, John W. Gavin. Mr. Gavin, it appears, was not familiar with the ways of the federal courts in general--and with the proscriptions of Rule 11 in particular.
 
 
 6
 Although Gavin's predecessor had made admissions that Martin was an employee of IBA, the answers to the First and Second Amended Complaints, signed by Gavin, claimed that Martin was an independent contractor who owed no fiduciary duty to IBA. When Martin testified during the trial, however, he conceded that he was employed by IBA. Following Martin's admission of employment, IBA made an oral motion under Rule 11 of the Federal Rules of Civil Procedure requesting that sanctions be imposed against Gavin for his prior pleading denying Martin's employee status.
 
 
 7
 In addition, after the conclusion of the trial, IBA made a supplemental written motion for sanctions pursuant to Rules 11, 26(g) and 37 of the Federal Rules of Civil Procedure, 28 U.S.C. Sec. 1927 and common law "bad faith."[1] It based the second request for sanctions upon several instances of allegedly improper conduct by Gavin, including:
 
 
 8
 (a) Gavin's denial of 17 allegations in the second amended complaint that were either admitted or not contested at trial, and three defenses relied upon by defendants, citing Rule 11 and 28 U.S.C. Sec. 1927;
 
 
 9
 (b) Gavin's accusation during trial that IBA fabricated an exhibit, citing 28 U.S.C. Sec. 1927 and common law "bad faith;"
 
 
 10
 (c) The denial of 36 out of 45 transactions which were the subject of requests for admission that Gavin later conceded were true by stipulation, citing Rules 11 and 26(g);
 
 
 11
 (d) The tendering of a psychologist and a psychiatrist as experts to show emotional distress claimed to have been caused by the alleged libel and slander of Martin, citing Rules 11, 26(g) and 28 U.S.C. Sec. 1927; and
 
 
 12
 (e) Various other improprieties connected with allegations in the defendant's counterclaim, including an accusation that IBA and Mr. & Mrs. Gaik (the owners of IBA) had hired someone to burglarize Mueller's home, and an allegation that the defendants were watched, followed or harassed.
 
 
 13
 Judge Getzendanner granted IBA's initial request for sanctions and assessed Gavin $3,000 for contesting whether or not Martin was an employee of IBA. Additionally, the court ruled in favor of IBA on its supplemental motion for sanctions, and ordered an additional assessment against Gavin in the amount of $31,902, half of the attorneys' fees awarded to IBA.
 
 II. IBA's Initial Request for Sanctions
 
 14
 Whether or not Martin was an employee of IBA was a crucial issue in the case. Gavin argues that he reasonably disputed whether or not Martin was employed by IBA because the record did not clearly indicate an employer-employee relationship. Gavin claims that his only source of information on whether Martin was an employee of IBA was Martin himself. Martin represented to him, Gavin argues, numerous facts to which he also testified at trial supporting his claim of independent contractor status.[2] Gavin further contends that he could not rely upon IBA's owners or upon documents supporting this arrangement because there was no agreement reduced to writing.
 
 
 15
 IBA argues in response that evidence adduced during discovery and offered by IBA at trial established that although Martin initially was retained on a free-lance basis in late 1981, he became a salaried employee in January 1982, was placed on IBA's payroll and began to have income and Social Security taxes withheld from his pay. He was given a title and an office, and a staff was hired to work under him. Martin himself conceded at trial that he was an employee of IBA.
 
 
 16
 Quite aside from the trial testimony itself, however, IBA points out that it established Martin's employee status at trial mainly through documentary evidence that had been available to Gavin before he signed the pleadings in question. W-2 forms provided to Martin by IBA listed Martin as "employee" and IBA as his "employer." In October, 1985, Martin filed a wage claim application with the Illinois Department of Labor seeking recovery of wages, payment for "two weeks notice" (presumably this is severance pay) and for unpaid vacation and sick leave. He listed his "employer" as IBA, stated that he was its "Advertising Director," and "salaried," and that he worked an eight-hour day. These documents were noted by Judge Getzendanner in her opinion.
 
 
 17
 In addition, a new W-4 form filled out by Martin in July, 1983, listed IBA as "employer" and was signed by Martin in the space marked "employee." Beginning in 1982, moreover, Martin was paid with IBA payroll checks, and IBA withheld Social Security and income taxes therefrom. Martin's performance was appraised by IBA in 1982 and 1983 on forms identifying him as "employee," which forms were signed by him in a space marked "employee's signature."
 
 
 18
 Gavin does not deny that these documents existed, nor does he claim that they were not available to him before he signed any of the pleadings in question. Rather, he claims that these were "factors" to be weighed against other "incidents of the [employee-employer] relationship" in order to determine employee status, citing NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258, 88 S.Ct. 988, 999, 19 L.Ed.2d 1083 (1968). We disagree.
 
 
 19
 Gavin, as discussed above, relied on Martin's statements for the facts he claims support Martin's claim of independent contractor status.[3] Yet these documents, which clearly belie this claim, existed and were available to Gavin at that time. Cf. Brown v. Federation of State Medical Bds., 830 F.2d 1429, 1436 (7th Cir.1987) (where record was developed by the time third lawyer was substituted in the case, it was not necessary for him to rely on his client for the factual foundation).
 
 
 20
 Under Rule 11, attorneys are required to make a reasonable inquiry to determine whether pleadings or other documents they sign are well-grounded in fact and warranted by existing law. If the district court concludes that the motion, pleading, or other document was not well-grounded in fact or warranted by the existing law, or was meant to harass, then the court must impose a sanction. Fed.R.Civ.P. 11; Brown, 830 F.2d at 1433.
 
 
 21
 There are two grounds for sanctions in Rule 11: the "frivolousness clause" and the "improper purpose clause." As set forth in Brown, the frivolousness clause of Rule 11 has two subparts: whether the party or attorney made a reasonable inquiry into the facts, and whether the party or attorney made a reasonable inquiry into the law. Brown, 830 F.2d at 1435-36. Similar to the district judge in Brown, the trial court's ruling here seems to be based on Gavin's failure to make reasonable inquiries into either the facts or the law, which violated the two subparts of the frivolousness clause. See Thomas v. Capital Security Services, Inc., 812 F.2d 984, 988 (5th Cir.1987), aff'd in part, vacated and remanded in part, 836 F.2d 866 (5th Cir.1988) (en banc).
 
 
 22
 In Brown, we analyzed the inquiries a district court must make in determining whether an attorney's conduct has violated the frivolousness clause thus:
 
 
 23
 To determine whether the attorney made a reasonable inquiry into the facts of a case, a district court should consider: whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient prefiling investigation; and whether discovery would have been beneficial to the development of the underlying facts....
 
 
 24
 To determine whether the attorney in question made a reasonable inquiry into the law, the district court should consider: the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law.
 
 
 25
 Brown, 830 F.2d at 1435 (citations omitted).
 
 
 26
 We review the factual findings made by the district court in deciding whether Rule 11 was violated under the clearly erroneous standard. Stotler & Co. v. Able, 870 F.2d 1158, 1166 (7th Cir. 1989); Borowski v. De Puy, Inc., 850 F.2d 297, 304 (7th Cir.1988); Brown, 830 F.2d at 1434; Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1082 (7th Cir.1987), cert. dismissed, --- U.S. ----, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).
 
 
 27
 Whether or not there was a Rule 11 violation, however, has been subject to appellate review in this circuit under two different standards. Some opinions have employed the abuse of discretion standard. See, e.g., FDIC v. Tekfen Constr. & Installation Co., 847 F.2d 440, 443 (7th Cir.1988); In re Ronco, Inc., 838 F.2d 212, 217 (7th Cir.1988); In re Central Ice Cream Co., 836 F.2d 1068, 1072 (7th Cir.1987); Ordower v. Feldman, 826 F.2d 1569, 1574 (7th Cir.1987); R.K. Harp Investment Corp. v. McQuade, 825 F.2d 1101, 1103 (7th Cir.1987). Other cases in this circuit have employed a de novo standard of review in addressing whether a party or attorney violated Rule 11. See, e.g., Fred A. Smith Lumber Co. v. Edidin, 845 F.2d 750, 751 (7th Cir.1988); Brown, 830 F.2d at 1429 (citing Szabo Food Service, 823 F.2d at 1082); Shrock v. Altru Nurses Registry, 810 F.2d 658, 661 (7th Cir.1987) (applies de novo standard without discussion).[4] In this case, however, it does not matter which standard of review we employ: we conclude that Rule 11 was violated under either standard. Magnus Electronics, Inc. v. Masco Corp. of Ind., 871 F.2d 626, 630 (7th Cir. 1989); Stotler & Co., 870 F.2d at 1166-67.
 
 
 28
 If a determination is properly made that sanctions are warranted, the district court shall impose a sanction. Frantz v. United States Powerlifting Fed'n, 836 F.2d 1063, 1065 (7th Cir.1987). The district judge has, however, a wide range of sanctions that he or she may impose. Available sanctions range from such judicial actions as an off-the-record reprimand to reprimand on the record, to monetary assessments or penalties. Cf. Frantz, 836 F.2d at 1066. The type of sanction devised by the court should, of course, relate to the severity of the violation. In any event, a finding that a sanction is warranted does not necessarily require a monetary assessment. Such a finding requires only that some remedial action be taken by the court.
 
 
 29
 Once a violation is found and sanctions are warranted, whether the type of sanctions imposed (and, if a monetary assessment is imposed, the amount imposed) is proper is subject to the abuse of discretion standard of review. Tekfen, 847 F.2d at 433 n. 3; Frantz, 836 F.2d at 1066; Brown, 830 F.2d at 1434 and cases cited therein. To facilitate an appropriate review, the district court should impose sanctions with some precision.
 
 
 30
 Rule 11 does not require lawyers to conduct "exhaustive research." Szabo Food Service, 823 F.2d at 1081. It does, however, require them to make a reasonable inquiry into the facts. Mere good faith is not enough. Ordower, 826 F.2d at 1574. It is clear that Gavin did not make a reasonable inquiry here. Thus, we affirm Judge Getzendanner's ruling that the denial of the allegation that Martin was an employee of IBA violated Rule 11.
 
 
 31
 In this case, moreover, we do not think that the amount of the sanction imposed, $3,000, constituted an abuse of discretion. As this circuit has pointed out in other cases, Rule 11 permits the imposition of monetary penalties (apart from those for expenses and attorneys' fees) for frivolous conduct. Cf. Cheek v. Doe, 828 F.2d 395, 397-98 (7th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 349, 98 L.Ed.2d 374 (1987). We do not feel that the district judge abused her discretion in this case. The amount of the penalty imposed by the district court appears roughly commensurate with the frivolous nature of Gavin's denial, and with the burden imposed on IBA in proving the employee issue at trial. Ordower, 826 F.2d at 1576 (collecting cases); Cheek, 828 F.2d at 397.
 
 III. IBA's Supplemental Request for Sanctions
 
 32
 We now turn to IBA's second request for sanctions. The court granted this supplemental motion for sanctions and assessed Gavin over $31,000. Gavin argues both that the sanction was unwarranted and that it was excessive and unduly harsh.
 
 
 33
 Thus, we must first address whether Gavin's conduct was in fact sanctionable. We find that Judge Getzendanner failed adequately to specify the authority or authorities under which she imposed this sanction upon Gavin. Because of the confusion as to which conduct was being sanctioned under which statute or rule, it is not entirely clear to us that all of Gavin's conduct deemed improper was sanctionable. Hence, we remand this matter for redetermination by the district court of whether Gavin's conduct violated any statutes or rules regarding attorney conduct, and if so, a specification of which statutes or rules.
 
 
 34
 The reason why the record in this case is confusing is this: IBA sought sanctions under Rules 11, 26(g) and 37 of the Federal Rules of Civil Procedure[5] as well as 28 U.S.C. Sec. 1927 and common law "bad faith."[6] Judge Getzendanner's order imposing sanctions, however, stated that IBA requested "an award of fees against John W. Gavin under both Rule 11 and Rule 37 of the F.R.Civ.P." Following a discussion of her analysis of the various allegations of sanctionable conduct, Judge Getzendanner concluded:
 
 
 35
 The court has determined that a substantial sanction must be imposed on Mr. Gavin. The court noted after the trial that Mr. Gavin's performance was inadequate. Most of the problems stemmed from his unrealistic view of the facts and the law of the case. However, in addition, he knew nothing about RICO, he very likely had a conflict of interest in representing both Martin and Mueller since Mueller could have relied on a defense antagonistic to Martin's defense, and he lacked rudimentary familiarity with the Federal Rules of Evidence.
 
 
 36
 Focusing only on the conduct of Gavin "which the court has found constituted a violation of Rule 11 or Rule 37 of the F.R.Civ.P. and of 28 U.S.C. Sec. 1927," the district judge then imposed the sanction of $31,902. In only a few instances prior to this statement did she specify which particular rule specific aspects of Gavin's conduct had or had not violated. As we discuss below, however, even these conclusions may have been erroneous.
 
 
 37
 The district judge's failure to specify clearly under what authority each aspect of Gavin's conduct was sanctionable impedes our review of her imposition of this sanction. This is because the standards to be utilized for determining whether sanctionable conduct exists are not consistent among the applicable rules and statutes. Rule 11 has been discussed in Section II above, and we need not repeat our discussion here. A court may impose sanctions under 28 U.S.C. Sec. 1927 against an attorney for conduct "unreasonably and vexatiously" multiplying the proceedings, where that attorney has acted in an objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice...." Walter v. Fiorenzo, 840 F.2d 427, 433 (7th Cir.1988) (citations omitted).
 
 
 38
 The district judge did not specify under which subsection of Rule 37 Gavin's conduct was sanctionable. It appears to us, however (although we by no means intend for this to limit the district court's review on remand), that the district judge might have been imposing this sanction under Rule 37(c). Under that rule, district judges may require parties to pay reasonable expenses, including attorneys' fees, for failure of a party to admit the genuineness of any document later proved genuine or the truth of any matter later proved true. Because there are several grounds under which district judges can deny requests for expenses and attorneys' fees under this rule,[7] and because the rule does not allow such fees as a matter of course, district judges have "almost absolute discretion" under this rule. Popeil Bros. v. Schick Electric, Inc., 516 F.2d 772, 777 (7th Cir.1975). Since the rule by its express terms applies only to parties, and not to attorneys, however, it may not be the basis for sanctions against an attorney. Apex Oil Co. v. Belcher Co. of N.Y., Inc., 855 F.2d 1009, 1014 (2d Cir.1988) (where rule by its terms applied only to parties, and other remedies for attorney misconduct existed, court refused to construe Rule 37(c) broadly to fill perceived "gap" in the federal rules). We note that any conduct of an attorney which would be sanctionable under Rule 37(c) if the attorney were a party may, however, be sanctionable under Rule 26(g). Id., 855 F.2d at 1014.
 
 
 39
 Rule 26(g) allows district courts to impose sanctions for discovery requests, responses and objections that fail to meet criteria similar to those for other pleadings laid out in Rule 11. Although this circuit has not addressed this rule before in detail, other circuits have noted that Rule 26 sanctions are to be analyzed like those imposed under Rule 11, even though the former rule imposes a more stringent certification requirement. See id., 855 F.2d at 1015.
 
 
 40
 In one of the few clear specifications in her order, Judge Getzendanner did note that Gavin's conduct in pursuing the defense that the plaintiffs "sustained no damages" was "unreasonable and vexatious and warranted sanctions under 28 U.S.C. Sec. 1927." This clearly stated finding, however, is undercut by the district judge's troubling observation that "due to Mr. Gavin's belief that the plaintiff would be unable to prove any damages, the defendants lost the opportunity to settle this case in advance of trial for a relatively small amount of money." From this wording, it is not unreasonable to conclude that the sanctions under Sec. 1927 may have been based, at least partially, on a "lost ... opportunity to settle [the] case." We emphasize that the loss of an opportunity for settlement should not be considered as a factor in determining the propriety or the amount of sanctions. Section 1927 does not command settlement as a requirement in the proper course of litigation, nor does any other statute or rule authorizing sanctions. Sanctions imposed for failure to settle constitute a clear abuse of discretion. Cf. Heileman v. Oat Corp., 871 F.2d 648, 653 (7th Cir. 1989) (en banc) (a district court cannot coerce settlement). Compare Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1482 (2d Cir.1988), cert. granted sub nom. Pavelic & LeFlore v. Marvel Entertainment Group, --- U.S. ----, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989) (while recognizing general rule that district court may not use the threat of sanctions to bring about the particular settlement of a case, court of appeals mentioned, without deciding, that sanctions might be appropriate against attorney for needlessly and vexatiously multiplying the proceedings by rejecting a settlement offer that would afford complete relief).
 
 
 41
 The district court's failure to specify which conduct of Gavin violated which rule or statute also merits remand because not every type of attorney misconduct is sanctionable under every rule. The literal language of Rule 11 covers all papers filed in a case, and thus this rule would seem to overlap with Rule 26. Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc., 809 F.2d 451, 454 (7th Cir.1987) ("Rule 11 applies to all papers filed in the litigation.... Papers in discovery also are covered by Rule 26(g)...."). Rule 11, it has been observed, also may overlap with Sec. 1927. Walter, 840 F.2d at 433. Other circuits that specifically have addressed this issue, however, have opined that Rules 26(g) and 37 are the primary provisions covering discovery abuses, that Rule 11 only applies to discovery motions, as well as of course to other papers, pleadings and motions to which other authorities are not applicable, and that 28 U.S.C. Sec. 1927 applies to instances where there is no violation of the technical rules, but where the proceeding is conducted in bad faith in order to cause delay or increase costs. See, e.g., Sheets v. Yamaha Motors Corp., 849 F.2d 179, 186 (5th Cir.1988); Matter of Yagman, 796 F.2d 1165, 1187 (9th Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987); Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir.1986).[8] Regardless of whether we agree with the other circuits on this point, we certainly can envision scenarios where conduct is covered by one rule but not by another.
 
 
 42
 For instance, we do not know whether the district judge's assertion that Gavin "knew nothing about RICO ... and ... lacked rudimentary familiarity with the Federal Rules of Evidence" pertained to pleadings signed by Gavin or to Gavin's trial conduct, or to both.[9] Lack of familiarity with the law that manifested itself in pleadings might, of course, constitute a violation of Rule 11, Hays v. Sony Corp., 847 F.2d 412, 419 (7th Cir.1988), or of both that rule and Sec. 1927. Trial conduct alone showing unfamiliarity with the law would, if the proper circumstances exist, violate only Sec. 1927. In either event, such an action would not violate Rule 37, which relates solely to discovery matters.
 
 
 43
 Judge Getzendanner's opinion, as discussed above, also noted in determining that the supplemental sanctions were warranted that Gavin "very likely" had a conflict of interest in representing both Martin and Mueller. Not only does the district court's opinion not indicate under what authority such conduct merits sanctions, but the few jurisdictions to address this problem have determined that sanctioning an attorney for not disclosing a conflict of interest requires a finding of some sort of wilfulness. See, e.g., United States v. Associated Convalescent Enters., 766 F.2d 1342, 1346-47 (9th Cir.1985) (sanctions under Sec. 1927 for failure to disclose conflict of interest warranted where counsel's actions in failing to disclose were "calculated"); Harris v. Marsh, 123 F.R.D. 204, 217-18 (E.D.N.C.1988) (sanctions for "deliberate indifference" to ethical responsibilities regarding conflict of interest permissible under court's inherent power). The court made no such finding here.
 
 
 44
 We do not intend to promulgate a requirement that district judges henceforth issue long, detailed orders in every case explaining to a minute degree their decisions to impose sanctions. Not every appeal involves as many different instances of alleged misconduct, or as many different rules and statutes, or such a substantial award. It is difficult to review such an award where the court gives no or few reasons therefor. Brown, 830 F.2d at 1438.
 
 
 45
 This court, moreover, previously has remanded district court decisions awarding sanctions for more complete consideration. In Brown, we requested in cases involving substantial monetary awards, "that a district judge state with some specificity the reasons for the imposition of the sanction, and the manner in which the sanction was computed.... Moreover, the sanctions awarded must 'be quantifiable with some precision and properly itemized in terms of the perceived misconduct and the sanctioning authority,' " 830 F.2d at 1438 (quoting Yagman, 796 F.2d at 1184); accord Magnus Electronics, 871 2d at 634; see also Pantry Queen, 809 F.2d at 453-56 (where district court did not specify the authority under which it imposed sanctions, court of appeals considered and rejected the applicability of Rule 11, but remanded for determination of whether sanctions were proper under the "American Rule"). Other circuits follow the practice of remanding where the district court fails to adequately specify the authority under which it imposes sanctions as well. See, e.g., Sheets, 849 F.2d at 184-86; Yagman, 796 F.2d at 1188; but see Apex Oil, 855 F.2d at 1014 (quoting In re Sutter, 543 F.2d 1030, 1032 n. 1 (2d Cir.1976)) ("order imposing sanctions 'must be upheld if there is any basis upon which it can be justified' ").[10]
 
 
 46
 In this case, under what authority the district court considered each aspect of Gavin's conduct to be sanctionable (and, to a lesser extent, whether some of the conduct the district court found sanctionable is sanctionable at all) is not readily apparent from the record. Compare Ordower, 826 F.2d at 1573 (where defendants moved for sanctions against plaintiffs for filing a frivolous complaint under Sec. 1927, which covers only attorneys, but district court awarded sanctions against plaintiffs and their counsel, it was clear that the district court was proceeding under both Rule 11 and Sec. 1927). Thus, we cannot review the district court's decision to impose the supplemental sanction, because we do not know what the district court intended. Cf. Sheets, 849 F.2d at 185.
 
 
 47
 Therefore, we vacate the award of sanctions under IBA's supplemental request for sanctions, and remand this matter for proceedings in accordance with this opinion. Since we have vacated the second assessment of sanctions, we need not discuss whether it was excessive. If the district court on remand determines that a substantial monetary award is warranted as a sanction, however, we request that it follow the specificity requirements laid out in Brown, discussed above.
 
 IV. Conclusion
 
 48
 We AFFIRM the imposition of sanctions under Rule 11 and the penalty of $3,000 assessed against John W. Gavin for his denial of Martin's employment status with IBA. We VACATE the supplemental imposition of sanctions and REMAND the matter to the district court for proceedings in accordance with this opinion. In remanding this case we make no indication as to whether sanctions should be imposed, or if they are imposed, what type they should be. That is, the district judge may choose, if he or she decides that sanctions are warranted at all, from an entire range of sanctions--including those which do not involve a monetary award.
 
 
 
 [1]
 IBA's motion itself cited Rule 37 of the Federal Rules of Civil Procedure, and did not cite Rule 26(g). Its memorandum in support of its motion, however, cited Rule 26(g) but not Rule 37
 
 
 [2]
 Gavin claimed that he was informed of the following facts, to which Martin testified at trial:
 (i) That Martin did not sign an employment agreement as was required by Plaintiff's policy. (Tr. 540.)
 (ii) That Martin did not solely perform functions that were an essential part of Plaintiff's normal operations of marketing group insurance plans, but rather acted as an advisor and consultant. (Tr. 537.)
 (iii) That Martin worked for a number of other corporations in which Casey Gaik had an interest, and did not perform services exclusively for IBA. (Tr. 535, 537.)
 (iv) That Martin observed his own hours, and came and went at his own discretion, without supervision or control. (Tr. 540.)
 (v) That Martin was not treated like the other employees of Plaintiff. (Tr. 535.)
 (vi) That Gaik advised Martin to keep Gaik's interests and activities confidential from the employees of Plaintiff. (Tr. 535.)
 (vii) That Martin entered into a verbal agreement with Gaik to establish an advertising agency in which they were to be partners. (Tr. 570-72.)
 
 
 [3]
 A note of caution is warranted. If Gavin had asserted that he deliberately was misled by Martin into making a denial of employment, we would have an entirely different, and very serious problem. Such an assertion would pit the attorney against his client to enable the attorney to defend against the request for sanctions. This scenario obviously presents far-ranging implications which we do not face in this case. See, e.g., Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1471, 1475-77 (2d Cir.1988), cert. granted sub nom. Pavelic & LeFlore v. Marvel Entertainment Group, --- U.S. ----, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989)
 
 
 [4]
 The opinions employing the abuse of discretion standard have noted that they have done so because whether a party has violated Rule 11 is a judgment call. Central Ice Cream, 836 F.2d at 1052. Trial courts, moreover, have "an intimate familiarity with the relevant proceedings," R.K. Harp, 825 F.2d at 1103. Thus, they urge that "the ultimate findings regarding sanctions should receive deference and be rejected only if the district court has abused its discretion." Tekfen, 847 F.2d at 443
 
 
 [5]
 See supra note 1
 
 
 [6]
 See infra note 8
 
 
 [7]
 Rule 37(c) provides that the court "shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit."
 
 
 [8]
 District courts also have the inherent power to impose sanctions for attorney misconduct. See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67, 100 S.Ct. 2455, 2463-65, 65 L.Ed.2d 488 (1980); Hall v. Cole, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); Magnus Electronics, 871 F.2d at 632. The district court in this case did not impose sanctions under this power, but rather cited to the authorities discussed above. Thus, we need not discuss whether the second sanction (or any portion thereof) was a proper exercise of that power
 
 
 [9]
 Judge Getzendanner's order previously had stated that the denial of plaintiff's allegation that defendants were "associated with" plaintiff violated Rule 11. This ruling, however, seems also to have been based upon Gavin's conduct at trial, which made it clear to the district court that Gavin did not understand the legal significance under RICO of that term. We note in passing that the district court here was not relying on the outcome at trial which, as appellant correctly points out, is prohibited by our decision in R.K. Harp, 825 F.2d at 1103. Rather, it relied on the conduct at trial. Because we are remanding IBA's supplemental request for sanctions, however, we need not consider the propriety of this action
 
 
 [10]
 We employ slightly different criteria in determining whether to remand when a district court fails to give sufficient reasons when it denies a motion for sanctions. In Szabo, we said:
 We do not now join the Fifth Circuit in requiring judges to make findings and give explanations every time a party seeks sanctions under Rule 11 ... Sometimes the reason for decision is obvious. When the motion for sanctions is foolish, or when the reasons for denying a colorable motion are apparent on the record, the judge need not belabor the obvious.
 823 F.2d at 1084; accord Local 232, Allied Industrial Workers of America v. Briggs & Stratton Corp., 837 F.2d 782, 788 (7th Cir.1988). But see Fred A. Smith Lumber Co., 845 F.2d at 752 (failure of the district court to address arguments made by the movants required remand, "as each of [the movants'] claims must be specifically and separately analyzed").