Vicki B. LEE; et al., Plaintiffs,

v.

Stephen S. WALTERS;
et al., Defendants.

Civil No. 95–274–ST.

United States District Court,
D. Oregon.

April 10, 1997.

portion of a magistrate judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Defendants have timely filed objections. I have, therefore, given *de novo* review of Magistrate Judge Stewart's rulings.

I find no error. Accordingly, I ADOPT Magistrate Judge Stewart's Findings and Recommendation (# 96) dated September 18, 1996, in its entirety. Plaintiffs' motions for sanctions (# # 55 and # 57–2) are GRANTED as follows: (1) defendant's attorney, Assistant Attorney General Kendall M. Barnes, is ordered to pay to plaintiffs their expenses in the sum of $7,026.00, and (2) this court publicly reprimands Mr. Barnes by publishing its order.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATIONS

STEWART, United States Magistrate Judge:

### *INTRODUCTION*

On June 18, 1996, plaintiff Vickie Lee filed a Motion for Sanctions (docket # 55) based upon defendants' failure to cooperate in scheduling depositions, to timely file an Answer, and to timely and completely respond to plaintiffs' request for production of documents. On June 24, 1996, when defendants failed to appear for duly noticed depositions, both plaintiffs filed Motions to Compel and for Sanctions (docket # 57–1 and # 57–2). On June 25, 1996, this court granted the Motion to Compel (docket # 57–1) in part and set both motions for sanctions for decision on July 15, 1996, after the close of discovery.

Due to problems completing discovery, this court issued an order on July 2, 1996, resetting the motions to August 19, 1996, and ordering defendants to file their response by August 5, 1996. Defendants filed their response almost two weeks late on Au-

Vicki B. Lee, Vancouver, WA, Pro Se.

Jackie Sanders, Portland, OR, for Vicki B. Lee.

Darrell E. Lee, Vancouver, WA, Pro Se.

Gregory A. Chaimov, Kendall M. Barnes, Jr., Asst. Attorney General, Dept. of Justice, Salem, OR, for Defendants.

### *ORDER*

ROBERT E. JONES, District Judge:

Magistrate Judge Janice M. Stewart filed Findings and Recommendation (# 96) on September 18, 1996, in the above entitled case. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any

gust 16, 1996, without first requesting and obtaining leave of court for an extension of time or offering any explanation for the delay. After plaintiffs filed their reply on August 20, 1996, this court took the motions under advisement on August 21, 1996. Three weeks later, defendants belatedly filed a supplemental affidavit, again without first requesting and obtaining leave of court. Plaintiffs filed a motion to strike the supplemental affidavit, which this court denied. In reaching its decision on the sanctions motions, this court has considered not only defendants' supplemental affidavit, but also plaintiffs' responsive memorandum and supplemental affidavit filed in support of plaintiffs' motion to strike.

For the reasons set forth below, this court recommends that plaintiffs' motions for sanctions be granted.

### DISCUSSION

Plaintiffs seeks monetary sanctions against defendants in the sum of $10,000.00 pursuant to FRCP 37(a)(4)(A), (b), and (d), FRCP 26(g), and the court's inherent authority. Because each of the subsections of FRCP 37 and FRCP 26(g) targets a particular form of misconduct for which sanctions may be awarded, each must be analyzed separately.

### I. *FRCP 37(d)*

#### A. *Standard*

■ FRCP 37(d) authorizes the court to impose sanctions against a party who fails: (1) to attend a duly noticed deposition, (2) to serve answers or objections to interrogatories properly submitted under FRCP 33, or (3) to serve a written response to a request for inspection properly submitted under FRCP 34. Sanctions are *mandatory* for failure to attend a noticed deposition or to respond to a request for production of documents unless the court finds that the failure was "substantially justified or that other circumstances make an award of expenses unjust." FRCP 37(d).

"The burden of establishing substantial justification is on the party being sanctioned." *Telluride Mgmt. Solutions, Inc. v. Telluride Inv. Group*, 55 F.3d 463, 466 (9th Cir.1995). The phrase "substantially justified" does not mean " 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action.]' " *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (brackets in original; citations ·deleted). However, FRCP 37(d) explicitly eliminates the excuse that "the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)."

■ Unlike FRCP 37(b), neither entry of a discovery order nor a finding of bad faith is a prerequisite for imposing sanctions under FRCP 37(d). *Halaco Eng. Co. v. Costle*, 843 F.2d 376, 380 (9th Cir.1988); *Telluride*, 55 F.3d at 466.

#### B. *Violations*

As detailed below, defendants have committed two violations of FRCP 37(d). It is undisputed that defendants failed to attend depositions duly noticed by plaintiffs on June 24 and 25, 1996. In addition, despite repeated requests, defendants still have not submitted a written response to Plaintiffs' First Request for Production of Documents ("First Request") dated April 19, 1996. Supplemental Declaration of Jackie Sanders ("Sanders Supp. Dec."), ¶ 2.

The record reveals that plaintiffs have satisfied the prerequisite to an award of sanctions under FRCP 37(d) in that they attempted to first resolve the issues without judicial intervention.

#### 1. *Failure to Attend Depositions*

After this case had been pending for nine months and after disposition of defendants' motions to dismiss, this court held a scheduling conference on January 24, 1996. At· that conference and after consultation with counsel, this court ordered the parties to complete depositions by March 20, 1996. However, defendants' attorney, Assistant Attorney General Kendall M. Barnes, failed to cooperate with plaintiffs, appearing *pro se* at that time, to schedule depositions. Plaintiffs

eventually filed a motion to compel defendants to set a deposition schedule and to extend the discovery deadline (docket # 30). Declaration of Darrell E. Lee in Support of Plaintiffs' Motions for Sanctions ("Lee Dec."), ¶¶ 2–5 and Exhibits A–D. On March 29, 1996, this court granted that motion and extended discovery to May 15, 1996, based on Mr. Barnes' representation that within a week he would set a schedule for the completion of depositions during April 1996.

Mr. Barnes did not respond to repeated inquiries and demands by plaintiffs to schedule depositions by the deadline. Lee Dec., ¶ 6 and Exhibits E and F; Affidavit of Jackie Sanders in Support of Plaintiffs' Motions for Sanctions ("Sanders Aff."), ¶¶ 4–8 and Exhibits A–B. Only after Mr. Sanders requested another scheduling conference with the court, did Mr. Barnes respond and agree to schedule depositions for June 10–12, 1996. Sanders Aff., ¶¶ 7–8 and Exhibits C and D. This court held another scheduling conference on June 5, 1996, and reluctantly extended discovery until June 28, 1996. According to this court's notes of that conference, Mr. Barnes confirmed the scheduling of depositions for defendant Stephen Walters on June 10, two or three others possibly on June 11, and Steve Barham on June 12, with dates yet to be set for the remaining two or three defendants. *Id*, ¶ 9. This court warned the parties that no further extensions would be granted and sanctions would be imposed if the parties did not complete discovery by June 28, 1996. *Id.*

Again Mr. Barnes failed to respond to Mr. Sanders' efforts to schedule depositions, prompting Mr. Sanders to file yet another motion for sanctions on June 10, 1996. *Id*, ¶¶ 10–16. In response, Mr. Barnes promised, but failed, to provide Mr. Sanders with a new deposition schedule, although tentatively agreeing to set depositions for the week of June 24, 1996. *Id*, ¶¶ 16–18 and Exhibits F–H. Not receiving any further word from Mr. Barnes and with the discovery deadline looming, Mr. Sanders on June 19, 1996, finally felt compelled to fax Mr. Barnes a notice setting five depositions (of

defendants Joanne McAdam, Laura Fine, Richard Reid, George Rankins, and Brad Higbee, who are all current or former member of the Oregon Racing Commission)[1] the following Monday and Tuesday, June 24 and 25, 1996. *Id*, ¶¶ 19–20 and Exhibits I–K.

On Thursday, June 20, 1996, Mr. Barnes began trying to contact the five defendants to determine if they were available on June 24 or 25, 1996, and learned that most of them were in an Oregon Racing Commission meeting in southern Oregon. Affidavit of Kendall Barnes ("Barnes Aff."), ¶ 4. Not having heard from Mr. Barnes, Mr. Sanders called him on Friday, June 21, 1996. Sanders Aff., ¶ 21. Mr. Barnes advised that he had a conflict on June 24, 1996, and did not know if his clients were available on June 24 or 25, 1996. *Id.* In a later telephone conversation that same day, Mr. Barnes proposed alternative dates of June 27 and 28, 1996, for the depositions, but could not confirm his clients' availability. *Id*, ¶¶ 22–23.

At this point, the recollections of Mr. Sanders and Mr. Barnes diverge. Mr. Sanders recalls that he told Mr. Barnes that the depositions were still scheduled for June 24 and 25, 1996, and that he could either attend or move for a protective order, to which Mr. Barnes responded with a cryptic "Then that's what we'll do" and hung up. *Id*, ¶ 28. Mr. Barnes did not subsequently seek a protective order. *Id*, ¶ 29. As a result, Mr. Sanders believed that, in the absence of a protective order, he had no choice but to attend the noticed depositions or risk being sanctioned himself for failure to appear if Mr. Barnes showed up with at least one deponent. *Id*, ¶ 30.

Mr. Barnes explains in his first affidavit that he did not attend the depositions on June 24 or 25, 1996, because "Mr. Sanders undeniably understood that I had not been able to talk to the witnesses he had noticed for depositions." Barnes Aff., ¶ 4. In his second affidavit, Mr. Barnes adds that he believed that "arranging for the depositions on June 27 and 28, 1996, was acceptable to plaintiffs" and that he "understood Mr. [Sanders] to have acknowledged that we

1. It appears that plaintiffs took the depositions of defendant Stephen Walters on June 10, 1996, and of Steve Barham on June 12, 1996, as previously scheduled.

would need to postpone the depositions for the few days necessary to accommodate all of the witnesses' and attorneys' schedules." Supplemental Affidavit of Kendall M. Barnes ("Barnes Supp. Aff."), ¶ 9. However, Mr. Barnes does not specifically deny that he told Mr. Sanders on June 21, 1996, that he would seek a protective order.

Neither Mr. Barnes nor any of the deponents appeared for depositions on Monday, June 24, 1996. *Id*, ¶ 31. When called by Mr. Sanders that day, Mr. Barnes stated that he would not attend, admitted that he had never filed for a protective order, and, according to Mr. Sanders, remarked that he was simply too busy to do that. *Id*. In neither of his two affidavits does Mr. Barnes specifically deny Mr. Sanders' recollection of this conversation.

### 2. *Failure to Produce Documents*

On April 24, 1996, Mr. Barnes promised to provide a time line for production of documents no later than April 30, 1996. Sanders Aff., Exhibit A. Mr. Barnes failed to honor his promise, subsequently made an appointment to call Mr. Sanders to discuss the problem, but never called. *Id*, ¶ 6. Mr. Barnes spent the next few weeks in April and May 1996 not returning or responding to Mr. Sanders' telephone calls and faxes. *Id*, ¶ 7. When Mr. Sanders finally made contact, Mr. Barnes promised to call Mr. Sanders to discuss the matter, but never did. *Id*. With the latest discovery deadline imminent, Mr. Sanders faxed a letter to Mr. Barnes imploring him to resolve the discovery problems. *Id*, Exhibit B. Mr. Barnes did not respond. *Id*, ¶ 7.

Plaintiffs then requested a scheduling conference with the court to discuss the discovery problems. *Id*, Exhibit C. On June 6, 1996, the day after that conference, Mr. Barnes finally produced some documents. *Id*, ¶ 33. On June 7, 1996, Mr. Sanders faxed a letter to Mr. Barnes detailing a number of deficiencies in the documents produced, but received no response. *Id*, ¶ 33 and Exhibit E.

At the deposition of defendant Stephen Walters held on June 10, 1996, plaintiffs inquired whether Mr. Walters had turned over to Mr. Barnes all documents within the scope of the First Request. Mr. Walters responded that he had never seen the First Request, and was never asked if he had any documents covered by it. *Id*, ¶ 34; Sanders Supp. Dec., Exhibit G. Similar responses were received from the other defendants during depositions. Sanders Aff., ¶ 34; Sanders Supp. Dec., ¶ 4. Mr. Barnes admits that he did not show the First Request to defendants, but states that he "discussed its parameters with them" and learned that "they retained no documents that were not duplicated in the Racing Commission's own files." Barnes Supp. Aff., ¶ 7. This explanation by Mr. Barnes conflicts with Mr. Sanders' recollection. Mr. Sanders recalls being told that Mr. Barnes did not show the First Request to defendants because he did not believe that it encompassed documents in the possession of individual defendants. Sanders Supp. Dec., ¶ 4. However, Mr. Sanders had specifically requested such documents in his June 7, 1996 letter. Sanders Aff., Exhibit E, p. 2.

Mr. Sanders again told Mr. Barnes of his concerns regarding deficiencies in the production of documents both during the depositions and in a second letter faxed to Mr. Barnes on June 13, 1996, but again received no response. *Id*, ¶ 35. On July 2, 1996, Mr. Sanders sent a follow-up letter to Mr. Barnes detailing the outstanding requests. *Id*, ¶ 36.

Mr. Sanders repeatedly told Mr. Barnes of the need for a signed, written response certifying that the requested documents either have all been produced, do not exist, or are being withheld on grounds of privilege. Sanders Supp. Dec., ¶ 2. Plaintiffs claim that this signed statement is needed for evidentiary purposes and, if plaintiffs later determine that documents were improperly withheld, for imposition of sanctions under FRCP 26(g). Although promising to provide this statement, Mr. Barnes has never done so. *Id*.

Mr. Sanders faxed yet another letter to Mr. Barnes on July 15, 1996, threatening to file a motion to compel the production of documents unless he received a response by the end of the day. *Id*, Exhibit A. Because

he was in court all that day, Mr. Barnes responded by fax on July 16, 1996, that he had relayed this request to his paralegal and would call as soon as he could. *Id,* Exhibit B. Accordingly, Mr. Sanders deferred filing a motion to compel. *Id,* Exhibit C. However, still receiving no response, Mr. Sanders faxed a reminder letter to Mr. Barnes on August 15, 1996. *Id,* Exhibit D. Despite this correspondence, defendants had not provided by as late as August 18, 1996, and apparently still has not provided, the requested documents or written assurance that such documents do not exist. *Id,* ¶ 3.

### C. *Defendants' Excuses*

#### 1. *Belated Compliance*

■ Defendants argue that sanctions are inappropriate because they belatedly appeared for depositions and produced most (though not all) of the requested documents, blaming plaintiffs' motion for sanctions on "obvious impatience." Response to Motions for Sanctions ("Response"), p. 3. This excuse has repeatedly been rejected by the Ninth Circuit. "Belated compliance with discovery orders does not preclude the imposition of sanctions." *North Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir.1986). *See also Henry v. Gill Indus., Inc.,* 983 F.2d 943, 947 (9th Cir.1993) (submitting to a deposition does not purge prior failure to appear for deposition); *G–K Properties v. Redevelopment Agency of City of San Jose,* 577 F.2d 645, 647–48 (9th Cir. 1978) ("last minute tender" of discovery does not cure effects of discovery misconduct.)

#### 2. *Substantial Justification*

##### (a) *Document Production*

■ Mr. Barnes does not dispute any of the material facts regarding his failure to timely produce documents. Instead, he states only that he provided all documents "with one minor exception" for "copies of all documents generated around March of 1993 now in the possession of any of the defendants, even if they are duplicates of documents plaintiffs have already seen in the Racing Commission files." Response, p. 2, n. 2.

This explanation is deficient for several reasons. First, it entirely fails to address the fact that he has not yet served a written response to the First Request, despite the pendency of these sanction motions. Second, even if a written response to the First Request is unnecessary, given that most of the responsive documents have now been produced, defendants' explanation does not substantially justify the belated production of responsive documents.

Mr. Barnes may have initially believed that producing the Oregon Racing Commission's files would provide plaintiffs with all of the documents requested in the First Request. However, this does not explain why he did not produce any documents until after plaintiffs were forced to seek the assistance of the court at the June 6, 1996 scheduling conference. And even if Mr. Barnes honestly misunderstood the scope of the First Request, Mr. Sanders cleared up any confusion by stating in his letter of June 7, 1996 that he requested not merely the sanitized official files from the Oregon Racing Commission office, but also all documents from the defendants' individual files which may contain handwritten notes of meetings or telephone conversations. That same letter also noted other deficiencies in the document production. Mr. Barnes did not respond either to Mr. Sanders' June 7, 1996 letter or to Mr. Sanders' follow-up letters of June 13 and July 2, 1996. Likely because Mr. Sanders threatened to file a motion to compel, Mr. Barnes did respond to Mr. Sanders' July 15, 1996 letter by promising to promptly call Mr. Sanders with updated information about the status of outstanding discovery matters, but then failed to do so. Mr. Barnes also failed to respond to Mr. Sanders' August 5, 1996 letter.

Plaintiffs understandably needed all responsive documents produced before taking defendants' depositions. Now that the depositions have been completed without production of all responsive documents, plaintiffs are deprived of the opportunity to question the witnesses about such documents (if they exist) or the diligence of their search for such documents (if they are not produced). In fact, plaintiffs suspect that some documents

may have been destroyed. Sanders Aff., ¶ 60.

As discussed below, Mr. Barnes' blames his busy schedule during this time period for the difficulty in scheduling depositions. However, he does not attempt to excuse his belated production of documents on lack of time. Barnes Supp. Aff., ¶ 3. Giving Mr. Barnes the benefit of the doubt, it is likely that his busy schedule also may have interfered with his ability to timely produce documents. However, Mr. Barnes' July 16, 1996 letter indicates that he had the assistance of a paralegal to obtain and produce responsive documents. No excuse is provided for the paralegal's inability to assist Mr. Barnes to timely respond to the First Request. More importantly, in the numerous conferences with this court, Mr. Barnes never mentioned that he was unable to produce responsive documents because he was overly burdened with other work.

In sum, defendants have presented no substantial justification for their failure, after four months and repeated requests, to produce all requested documents or serve a written response to the First Request.

**(b) Depositions**

Mr. Barnes now claims that Mr. Sanders should have understood that he would not be appearing for depositions on June 24, 1996, even though he did not clearly say so. This explanation directly contradicts Mr. Sanders' recollection that just before terminating their last telephone conversation on June 21, 1996, Mr. Barnes said he would seek a protective order. That statement of Mr. Barnes' intention, which Mr. Barnes has not specifically denied, would lead Mr. Sanders to reasonably conclude that Mr. Barnes would not simply ignore the deposition notices. Mr. Barnes' intention to seek a protective order is confirmed by his explanation on June 24, 1996, to Mr. Sanders that he had been too busy to seek one. Again, Mr. Barnes has not denied that he made that statement to Mr. Sanders.

In any event, even assuming that Mr. Sanders should have concluded that Mr. Barnes would not appear on June 24, 1996, due to his scheduling difficulties, sanctions are still in order. The Ninth Circuit has affirmed sanctions against defense counsel for failing to appear at a deposition absent a valid protective order, even though he had informed plaintiff that he did not plan to attend. *Telluride,* 55 F.3d at 466–67. "If [defense counsel] believed the notice was improper, he could have sought relief from the court." *Id* at 467, n. 3. Similarly here, Mr. Barnes knew that the deposition notice was valid and had been instructed by the court to complete depositions by June 28, 1996, yet failed to seek a protective order.

Mr. Barnes argues that his failure to attend was justified because notice of only two to three business days for depositions is "inherently unreasonable." Response, p. 2. However, if Mr. Barnes took issue with the timing, his remedy was to move for a protective order. He cannot simply ignore the notice, even if it was unreasonable. Moreover, the admittedly short notice was necessitated by Mr. Barnes' own dilatory conduct. With only one week remaining to complete discovery, plaintiffs had no choice but to force Mr. Barnes' hand: Whether or not Mr. Barnes was unable to contact his clients shortly prior to June 24, 1996, which plaintiffs dispute, the fact remains that he should have contacted them long before June in an attempt to schedule their depositions, rather than waiting until the very last week of discovery. The undisputed facts reveal that Mr. Barnes has made his clients available for deposition only with constant prodding by plaintiffs and the court.

In sum, Mr. Barnes's failure to appear for the noticed depositions was not substantially justified in the absence of a protective order or, at the very least, a clear and unambiguous agreement by Mr. Sanders to postpone the depositions. As a result, FRCP 37(d) requires the court to order defendants, Mr. Barnes, or both, to pay the reasonable expenses, including attorney's fees, caused by that failure.

**II. FRCP 37(a)(4)(A)**

**A. Standards**

In contrast to FRCP 37(d), FRCP 37(a)(4)(A) targets motions to compel discov-

ery. It awards reasonable expenses incurred, including attorney fees, not only when the court grants. a motion to compel, but also if the opposing party provides the requested discovery after the motion to compel is filed. FRCP 37(a)(4)(A); *Henry*, 983 F.2d at 947. An award of expenses is mandated unless the motion to compel was filed without "first making a good faith effort to obtain the disclosure of discovery without court action," the "nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust." FRCP 37(a)(4)(A).

## B. *Violations*

■ As set forth above, plaintiffs were obliged to file three motions to compel as a result of Mr. Barnes' conduct:

(1) March 18, 1996 motion to compel defendants' depositions, which the court granted on March 29, 1996;

(2) June 10, 1996 motion to compel a schedule for defendants' depositions that were supposed to commence that same day. Mr. Barnes furnished that schedule, such as it was, only after the motion was filed; and

(3) June 24, 1996 motion to compel defendants' depositions, which the court granted on June 25, 1996 with instructions to Mr. Barnes to give daily reports to opposing counsel of his efforts to locate and schedule his clients for depositions.

Also, on July 15, 1996, plaintiffs prepared yet another motion to compel production of documents, sent a draft to Mr. Barnes, but deferred filing based on Mr. Barnes' as yet unfulfilled promise to provide the requested documents.

The record reveals that plaintiffs have satisfied the prerequisite to an award of sanctions under FRCP 37(a)(4) because they first attempted to resolve the issues without judicial intervention.

## C. *Defendants' Excuses*

■ Defendants offer virtually no excuse for forcing plaintiffs to file the motions to compel, other than Mr. Barnes' busy schedule. He proffers several reasons that made it difficult for him to schedule depositions in this case. First, in the Torts and Employment Group of the Trial Division, the area of the Department of Justice in which he works, two of the eight attorneys left during the first part of 1996. Barnes' Supp. Aff., ¶ 3. Because Mr. Barnes handles between 40 and 50 active litigation files and must travel extensively throughout the Pacific Northwest, he "was required to spend a minimum of twenty-nine days in deposition and attend hearings or trial on 15 different days." *Id.* This court does not doubt that Mr. Barnes has been very busy and perhaps more so than usual during the first five months of 1996. Nevertheless, the fact remains that he never advised the court that his schedule prevented him from complying with the court's orders. The problem is not when depositions were set, but that Mr. Barnes repeatedly ignored inquiries from opposing counsel, which required plaintiffs to file motions to compel. Mr. Barnes may have been able to avoid these motions had he (or someone else in his office) simply returned Mr. Sanders' telephone calls or responded to Mr. Sanders' letters.

Second, Mr. Barnes notes that scheduling depositions of defendants, who are retired or are employed in the private sector, was more difficult than scheduling depositions of state employees. *Id.* ¶ 4. He communicated with defendants "as frequently as our mutual schedules allowed," but encountered particular difficulty communicating with two defendants who are "busy businessmen in Portland," a third defendant (Ms. McAdam) who resides on the Oregon coast and travels frequently, a fourth defendant (presumably Dr. Rankins) who is "a busy veterinarian in Albany," and another witness (Ms. Fine) who is a public defender in Lane County. *Id.* ¶ 5. He even enlisted the assistance of the executive director of the Racing Commission and an investigator. *Id.*

Mr. Barnes may well have encountered difficulty contacting his clients and other witnesses, but he notably neglects to state when he tried unsuccessfully to contact them. Given the problems encountered by Mr. Sanders and this court to complete discovery, whatever diligent efforts Mr. Barnes made to contact his clients to schedule depositions could

not have occurred from January through June 1996. Instead, it appears that his efforts were concentrated primarily in July 1996 after he had missed three deadlines for completing depositions and after plaintiffs filed motions for sanctions.

Mr. Sanders also disputes the alleged unavailability of the witnesses. He understood from Mr. Barnes on June 21, 1996, that most witnesses were available on short notice. Sanders Aff'd., ¶ 23; Sanders Supp. Aff'd., ¶ 6. He also notes that Mr. Barham is a full-time state employee in Portland; Mr. Sundermier is an attorney with the Department of Justice; Dr. Rankins is retired; and Ms. McAdam is retired, but testified that she was in town and available for depositions for most of the first six months of 1996. Sander Supp. Aff'd., ¶ 6; Sanders Supp. Dec., Exhibit H (Deposition of Joanne McAdam, p. 8). The only witness with a scheduling problem was Ms. Fine, a public defender in Lane County and a minor witness whom plaintiffs agreed to depose by telephone on a Saturday morning to accommodate her schedule. Sanders Supp. Aff'd., ¶ 6. Furthermore, Mr. Barnes made no effort to locate Ms. McAdam until July 1996. *Id.* ¶ 7.

Mr. Sanders further concludes that Mr. Barnes had not spoken to his clients in some time concerning deposition dates or else he would have known that several of them planned to be out of town for an extended period of time or were otherwise unavailable for depositions on June 27 and 28, 1996. Sanders Aff'd., ¶ 40. He also believes that Mr. Barnes could have easily contacted most of his clients during the monthly Oregon Racing Commission meetings. *Id.* ¶ 44. It is abundantly clear to this court that plaintiffs' only effective method for prompting Mr. Barnes into action has been to file motions to compel and for sanctions.

Defendants also suggest that the endless delays should be excused because this is a complicated case, as evidenced by plaintiffs' request for additional time to respond to the motion for summary judgment. However complex the legal claims may be in this case, discovery is not. Plaintiffs only sought eight depositions, all of which are Mr. Barnes' own clients, current or former state officials, and residents of Oregon. None of the depositions have required more than half a day. This current situation was caused simply by Mr. Barnes' dilatoriness. Mr. Barnes may believe that plaintiffs' claims lack merit and are a waste of both his and the court's time, but his belief, even if justified, is no excuse for avoiding his professional responsibilities through a campaign of passive resistance.

This court finds no substantial justification or other circumstances for avoiding the mandatory award under FRCP 37(a)(4)(A) to plaintiffs of their reasonable expenses, including attorney fees, for filing the three motions to compel.

## III. *FRCP 37(b)*

### A. *Standards*

■ Whereas FRCP 37(d) addresses the failure to attend a deposition and FRCP 37(a)(4)(A) addresses motions to compel, FRCP 37(b) targets a party's failure to obey an order to provide or permit discovery. It allows the court to make such orders "as are just," and in lieu or in addition, requires the offending party, its attorney or both "to pay the reasonable expenses, including attorney's fees, caused by the failure" unless it "was substantially justified" or "other circumstances make an award of expenses unjust." *Id.*

A prerequisite for imposing sanctions under FRCP 37(b) is the existence of an "order." However, the term "order" is broadly construed for purposes of imposing sanctions. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 368 (9th Cir.1992). The "order" need not be in writing. *Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir), *cert denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974) (court had orally requested that certain documents be produced). It is a violation of an "order" for purposes of FRCP 37(b) when a party fails to deliver documents it had promised by a certain date. *See Metropolitan Life Ins. Co. v. Cammon,* 1989 WL 153558 (N.D.Ill.1989), *aff'd* 929 F.2d 1220 (7th Cir.1991).

It is not even necessary for the opposing party to move for this order, only that it be issued and disobeyed. *Properties Int'l Ltd.*

*v. Turner,* 706 F.2d 308, 310 (11th Cir.1983). Examples include an oral directive to provide the opposing party "with complete discovery," *id.* and a minute order directing that depositions be taken by a specific date. *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 729 F.2d 469, 473 (7th Cir.1984). FRCP 37 does not require the violation to be in bad faith unless the court imposes the harshest sanctions of dismissal or default. *Telluride,* 55 F.3d at 466, n. 2.

### B. *Violations*

The record reveals that defendants disobeyed four orders that fall within the scope of FRCP 37(b):

(1) January 24, 1996 order directing the parties to complete depositions by March 20, 1996. On January 29, 1996, plaintiffs furnished Mr. Barnes with a list of witnesses under his control whom they wished to depose. Despite repeated requests, Mr. Barnes did not propose any dates or make any witnesses available, nor did he explain his failure to do so;

(2) March 29, 1996 order directing Mr. Barnes to cooperate in scheduling depositions, and requiring completion of discovery by May 15, 1996. Despite repeated requests, Mr. Barnes neither made any witnesses available nor provided any documents by that deadline;

(3) June 5, 1996 order requiring discovery to be completed by June 28, 1996, with a warning that sanctions would be imposed for failure to comply. Mr. Barnes had not provided all of the requested documents by as late as August 18, 1996, and may still not have produced them. This court also ordered Mr. Barnes to schedule five of his clients for depositions on June 10–12, 1996, and to provide plaintiffs with the schedule; he failed to do so in a timely manner. When he belatedly provided the schedule, it was only for two of the eight witnesses with no effort to schedule the remainder for other dates. Just five days before the discovery deadline, Mr. Barnes had no witnesses confirmed.[2]

(4) July 2, 1996 order setting a briefing schedule for the sanction motions and dispositive motions. Mr. Barnes filed his response to the sanctions motion two weeks late with no request for an extension of time. Mr. Barnes also failed to file dispositive motions by July 8, 1996. After plaintiffs asserted that defendants had waived their right to file any motions, defendants belatedly requested and received an extension of time until July 15, 1996. Defendants then ignored this new deadline as well and did not file the motions until July 19, 1996.[3]

### C. *Defendants' Excuses*

██ Defendants offer the same excuses for repeated violations of this court's orders as for their other violations of FRCP 37. As discussed above, this court finds that defendants' failure to comply with the court's orders was not substantially justified. Therefore, the court finds that sanctions are appropriate.

### III. *FRCP 26(g)*

### A. *Standards*

██ FRCP 26(g) mandates the imposition of sanctions for conducting discovery irresponsibly. It adopts the certification requirements of FRCP 11 and applies them to "[e]very discovery request, response or objection." FRCP 26(g)(2). Like FRCP 11, its requirements are strict; the standard of care is objective; and the sanctions are mandatory. Due to the similarity, courts have applied the case law applicable to the 1983 version of FRCP 11 to the sanctions lan-

---

**2.** Plaintiffs also complain that Mr. Barnes failed to comply with this court's oral directive to fax his Answer to plaintiff by June 9, 1996, for use in depositions the next day. Sanders Aff., ¶ 17. However, the court ordered the Answer to be filed by June 12, 1996. Although Mr. Barnes volunteered to fax it by June 9, 1996, to Mr. Sanders, this court did not order him to do so.

**3.** Although not requested by plaintiffs, this court has considered striking defendants' summary judgment motions as untimely filed. However, resolution of certain legal issues by summary

guage in FRCP 26(g).[4] *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir.1991); *Apex Oil Co. v. Belcher Co. of N.Y., Inc.*, 855 F.2d 1009, 1015 (2nd Cir.1988). In fact, sanctions inappropriately imposed under FRCP 11 or 37 have been converted to FRCP 26(g) sanctions. *Zimmerman v. Bishop Estate*, 25 F.3d 784 (9th Cir.), *cert denied*, 513 U.S. 1043, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994).

### B. Violation

■ Although noting that Mr. Barnes has repeatedly failed to comply with the discovery rules, plaintiffs concede that he has managed to avoid sanctions under FRCP 26(g) by filing no discovery responses at all. The imposition of sanctions under FRCP 26(g) rests upon the signing of a discovery document that violates the rule. If the wrongdoing does not involve a violative signature on a discovery request, response or objection, then FRCP 26(g) does not apply. Until defendants file an improper discovery response or objection, plaintiffs must seek sanctions under other rules.

## IV. Inherent Power of the Court

### A. Standards

■ To fill in the gaps between the other rules, courts are invested with inherent powers to sanction a party or counsel who "wilfully abuse[s] the judicial process." *Oregon RSA No. 6 v. Castle Rock Cellular of Or., Ltd. Partnership*, 76 F.3d 1003, 1007 (9th Cir.1996), quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). These sanctions are designed not only to provide a substantive remedy to an aggrieved party, but also to "vindicate judicial authority." *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir.1995). Pursuant to this inherent authority, this district court has adopted Local Rule 110–4 which permits the court to impose sanctions "if it finds that counsel has been unreasonable in

not accommodating the legitimate requests of opposing counsel."

However, "[s]uch sanctions require a court to make a finding of subjective bad faith," and due process concerns "may require fair notice and an opportunity for a hearing on the record." *Oregon RSA No. 6*, 76 F.3d at 1007.

### B. Violations

■ Plaintiffs allege the same lengthy list of violations under FRCP 37 as the basis for imposing sanctions under the inherent powers of the court. In addition, plaintiffs note that defendants have committed a number of acts of misconduct not covered by FRCP 37 or 26(g) which have caused them considerable expense. These include:

(1) Mr. Barnes never bothering to review the requests for production with his clients to determine if they had any responsive documents;

(2) Defendants' continued failure to file a signed response to the requests for production certifying that all responsive documents have been produced;

(3) The hours spent by plaintiffs prodding Mr. Barnes to respond.

However, this alternative basis for imposing sanctions is neither necessary nor appropriate for two reasons. First, most of the objectionable conduct is covered by FRCP 37. And second, although defendants have been given "fair notice" that plaintiffs are seeking such sanctions, neither party has requested a hearing on the record.

## V. Amount of Sanctions

### A. Plaintiffs' Request

Plaintiffs seek monetary sanctions in the sum of $10,000.00, without specifying whether they seek an order against defendants, Mr. Barnes, or both. In support of this request, plaintiffs' attorney has submitted his time sheets and affidavits setting forth the

---

judgment appears to be the most efficient approach in this case.

4. To the extent that the 1993 version of FRCP 11 no longer includes mandatory sanctions and in-

corporates a safe harbor, it is not parallel to FRCP 26(g). However, the case law developed under the 1983 version of FRCP 11 is appropriate precedent.

number of hours expended on the discovery issues involved and on these motions. Sanders Aff'd., ¶ 48 and Exhibit N; Sanders Supp. Dec., ¶ 6 and Exhibit F; Sanders Supp. Aff'd., ¶ 9. These time sheets show that Mr. Sanders has expended 35.45 hours at the rate of $120.00 per hour from April 24 through July 2, 1996, another 24.10 hours from July 2 through August 18, 1996, and a further 3.60 hours through September 10, 1996. Mr. Sanders also estimates that he has spent an additional unrecorded six to eight hours on brief telephone calls and conferences between co-counsel, as well as another three or four hours in wasted deposition preparation time. Sanders Aff'd., ¶¶ 49–51. In addition, Mr. Sanders conservatively estimates that plaintiffs have spent approximately $200.00 for long distance charges for "literally dozens of faxes and telephone calls to Mr. Barnes' office" and with co-counsel. Sanders Aff'd., ¶ 56. In addition, he asserts that the last minute scheduling and canceling of depositions has resulted in unnecessary travel time, lost opportunity costs, premium court reporter rates, and the intangible costs of frustration, aggravation, and stress. *Id.* ¶¶ 52–53, 57–58. Mr. Sanders also fears that documents may have been destroyed and that plaintiffs have been denied the benefit of reviewing documents in the possession of defendant Rankins. *Id.* ¶ 55.

## B. *Sovereign Immunity*

■ Although the issue was not raised by any party, this court notes that defendants are former and current public officials represented by a publicly employed lawyer. Imposing a judgment that obligates the public treasury without the sovereign's consent is generally barred by sovereign immunity. Absent an explicit waiver of sovereign immunity, courts may not assess monetary awards, including attorneys' fees, against the federal government. *United States v. Nordic Village,* 503 U.S. 30, 37, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181 (1992). It is less clear whether sovereign immunity also may save the federal government from court imposed monetary sanctions. Compare *United States v. Horn,* 29 F.3d 754 (1st Cir.1994) (holding that sovereign immunity bars monetary sanctions against the United States for prosecu-

torial misconduct) and *United States v. Woodley,* 9 F.3d 774, 781 (9th Cir.1993) (holding that neither the local rules nor the Rules of Criminal Procedure waive sovereign immunity for monetary sanctions against the government) with *Mattingly v. United States,* 939 F.2d 816, 818 (9th Cir.1991) (holding that the United States is not immune from Rule 11 sanctions) and *United States v. National Medical Enters., Inc.,* 792 F.2d 906, 910–11 (9th Cir.1986) (upholding Rule 37(b) sanctions against the United States without addressing the sovereign immunity issue). Nevertheless, sovereign immunity does not seem to bar "a monetary penalty as a sanction against a rogue attorney merely because she happens to represent the federal government." *United States v. Horn,* 29 F.3d at 766, n. 14.

■ In contrast to the sovereign immunity of the federal government, the immunity of a state derives solely from the Eleventh Amendment. Unlike the explicit waiver required to avoid the bar of federal sovereign immunity, an exception has been carved from the Eleventh Amendment to allow the imposition of monetary sanctions against a state. It is "settled that an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment." *Missouri v. Jenkins,* 491 U.S. 274, 279, 109 S.Ct. 2463, 2467, 105 L.Ed.2d 229 (1989). See also *Fortin v. Commissioner,* 692 F.2d 790, 797–98 (1st Cir.1982) (holding that avoidable fines for contempt against the State are not barred by the Eleventh Amendment). Similarly, there seems to be no constitutional obstacle to sanctioning a state-employed lawyer without the possibility of indemnification by the State. *Derechin v. State Univ. of N.Y.,* 963 F.2d 513, 517–19 (2nd Cir.1992) (upholding Rule 11 sanction against state-employed lawyer with a prohibition against reimbursement from her client or employer). Thus, it appears that a federal court is free to impose monetary sanctions under the Federal Rules of Civil Procedure against a state, its agencies and officials, as well as against the publicly employed attorneys who represent them.

## C. *Appropriate Sanctions*

██ The decision to impose sanctions under FRCP 37 is left to the court's discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Forro Precision, Inc. v. IBM*, 673 F.2d 1045, 1053 (9th Cir.1982). Exercise of that discretion has been "encouraged" when "counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules and orders." *G–K Properties*, 577 F.2d at 647. As explained by the Ninth Circuit:

> Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.

*Id.*

This court may impose even the "most severe" sanction to fulfill the purpose "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League, supra*, 427 U.S. at 643, 96 S.Ct. at 2781 (affirming extreme sanction of dismissal for violation of FRCP 37).

██ In fixing the amount of the sanction, the court may consider a party's entire course of conduct during the proceedings. *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 772 (9th Cir.1995); *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1381 (9th Cir.1988).

██ For at least the past six months defendants' attorney, Mr. Barnes, has repeatedly failed to cooperate with plaintiffs in good faith in the discovery process, employed dilatory tactics, and repeatedly ignored the rules and this court's orders. He offers no satisfactory explanation for his complete indifference to his professional obligations both to the court and opposing counsel. His egregious dilatory conduct not only has unnecessarily delayed the completion of discovery and the filing of dispositive motions, but also has increased the time and expense of this litigation to plaintiffs and unnecessarily and repeatedly involved the court in resolving ongoing discovery problems.

Mr. Barnes is not a novice attorney, but is a veteran trial lawyer who is or should be aware of the conduct expected of him by this court. Unacceptable conduct by him in *Moore v. SAIF*, CV–93–600–JU, prompted a letter from Magistrate Judge Juba dated August 30, 1993 (with a copy sent to the Attorney General for the State of Oregon), reminding Mr. Barnes of his obligations under the Local Rules to attend oral argument, timely file memoranda, and be courteous and cooperative with opposing counsel.[5] In addition, opposing counsel in another case, *Martyr v. Mazur–Hart*, CV–95–557–AS, has recently filed a motion for sanctions against Mr. Barnes for unreasonable and dilatory conduct. Unless remedial action is taken by this court, Mr. Barnes' pattern of conduct may continue unabated.

This court does not take lightly the imposition of monetary sanctions, to which judges in this court have rarely resorted. However, each of the pertinent subsections of FRCP 37 explicitly state that the court "shall" require the offender to pay the reasonable expenses, including attorney's fees, incurred by the other side as a result of the offense unless the conduct was "substantially justified" or that "other circumstances make an award of expenses unjust." FRCP 37(a)(4)(A), (b)(2), and (d). As discussed above, defendants have failed to carry their burden to show that the violations were substantially justified and have proffered no other circumstances to make an award of expenses unjust.

This court is satisfied that the hours listed on the time sheets submitted by Mr. Sanders' are all fairly attributable either to defendants' failure to attend a noticed deposition, failure to serve a response to the First Request, plaintiffs' successful motions to compel or to defendants' failure to comply with the

---

5. A copy of that letter is attached.

court's orders, with two minor exceptions. The first exception is the time spent to obtain document production prior to the June 24, 1996 motion to compel responses to the First Request. This court estimates that this exception totals 3.3 hours between April 24 and June 24, 1996.[6] The second exception is the time spent on July 15 and 16, 1996, preparing a motion to compel which was not filed. This time totals 2.2 hours. Deducting these two exceptions leaves a total of 58.55 hours expended by Mr. Sanders which this court is required to award plaintiffs from defendants or Mr. Barnes as a direct result of the violations. At an hourly rate of $120.00, which defendants have not contested, the total award of attorney's fees based on recorded hours is $7,026.00. Although plaintiffs seek an award for additional unrecorded hours and costs, this court is reluctant to do so without supporting documentation.

■ Plaintiffs also seek additional damages, presumably under the rubric of "reasonable expenses." This court interprets "reasonable expenses" to mean only the actual costs incurred as a result of the misconduct, and not to include consequential damages. Even FRCP 11 does not authorize an award of consequential damages, even though one of its main objectives is deterrence. *See Business Guides, Inc. v. Chromatic Commun. Enter., Inc.,* 121 F.R.D. 402, 405–06 (N.D.Cal.1988), *rev'd in part on other grounds,* 892 F.2d 802 (9th Cir.1989), *aff'd* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (Supreme Court approvingly noted the district court's refusal to award consequential damages under FRCP 11). Therefore, it is not appropriate under FRCP 37 to require defendants to pay any amount other than plaintiffs' actual attorney's fees and costs incurred.

■ Although plaintiffs have not requested an allocation of the sanctions between defendants or their attorney, FRCP 37 contemplates that the burden will fall on the individual responsible for the offending conduct. It is clear that all of the violations are the responsibility of Mr. Barnes, not of his individual clients. Therefore, the award of expenses should be imposed only against Mr. Barnes. This court recognizes that Mr. Barnes, as a state employee, may be entitled to indemnity by his employer for such an award. *See* ORS 30.285. However, that is an issue best left to the discretion of Mr. Barnes' employer.

■ In addition to an award of expenses, FRCP 37 authorizes the court to make orders "as are just." Federal courts have a number of weapons in their armory of nonmonetary sanctions. For example, courts may remove attorneys from cases, *United States v. Horn,* 29 F.3d at 766, order the attorney to attend ethics seminars at the attorney's own expense, *Chilcutt v. United States,* 4 F.3d 1313, 1319 (5th Cir.1993), *cert. denied,* 513 U.S. 979, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994), dispatch the attorney to the employer's internal disciplinary office, *United States v. Hasting,* 461 U.S. 499, 506 n. 5, 103 S.Ct. 1974, 1979 n. 5, 76 L.Ed.2d 96 (1983), or issue a public reprimand, *United States v. Prince,* 1994 WL 99231 (E.D.N.Y. 1994). FRCP 37(b)(2) also authorizes a variety of non-monetary sanctions against the party who fails to obey a court order, such as designating facts as proven, prohibiting certain matters from being introduced into evidence, striking pleadings, dismissing the action, or even entering a judgment by default.

Although not specifically requested by plaintiffs, this court has carefully considered these other types of sanctions in lieu of, or in addition to, an award of expenses. This court is concerned by the fact that other judges and opposing counsel have experienced difficulties with Mr. Barnes in other cases at other times. Furthermore, any sanction that adversely impacts the defendants' ability to present a defense is aimed in the wrong direction: it is Mr. Barnes, and not his clients, who is the offender. Thus, in order to ensure that Mr. Barnes takes appropriate remedial action, this court recommends the issuance of a public reprimand in addition to the award of expenses. A public reprimand will serve the purpose of notifying

---

6. This sum consists of: .10 hour on 5/7/96; about .10 hour on 6/4/96; 2.40 hours on 6/7/96; .30 hour on 6/13/96; and .40 hour on 6/17/96. Sanders Aff'd., Exhibit N.

other attorneys and judges of conduct that this court finds unacceptable, and of ensuring that any such future conduct by Mr. Barnes will be brought to the court's attention and, if appropriate, will subject Mr. Barnes to the imposition of more severe sanctions.

## RECOMMENDATIONS

For the foregoing reasons, this court recommends that plaintiffs' motions for sanctions (docket # 55 and # 57–2) be GRANTED as follows: (1) defendant's attorney, Assistant Attorney General Kendall M. Barnes, be ordered to pay to plaintiffs their expenses in the sum of $7,026.00, and (2) this court publicly reprimand Mr. Barnes by publishing its order.

## ATTACHMENT

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### UNITED STATES COURTHOUSE

### PORTLAND, OREGON 97205

GEORGE E. JUBA

UNITED STATES MAGISTRATE

August 30, 1993

Kendall Barnes

Trial Division

Oregon Department of Justice

450 Justice Building

Salem, Oregon 97310

Mr. Barnes:

I am in receipt of your letter dated August 24, 1993 in the case of *Moore v. S.A.I.F.,* (CV 93–600–JU). This letter is to inform you of my concerns regarding your practice of law before the United States District Court for the District of Oregon.

I call your attention to the following:

1. **Failure to attend oral argument.** On Monday, August 23, 1993, you failed to appear at oral argument *Moore v. S.A.I.F.* Oral argument was set by way of minute entry on July 27, 1993 (docket # 28). No explanation

ATTACHMENT—Continued

was provided to the court prior to argument as to your absence. In fact, at argument, counsel for the remaining defendants indicated that he was under the impression that you would be at argument.

You now state that you marked the August 23 hearing off of your calendar because opposing counsel had initiated rescheduling and you thought it would be reset. However, during the week of August 16, my courtroom deputy made at least three telephone calls to your office to remind you that the court was awaiting your response and reply memoranda pertaining to the motions scheduled on August 23. No rescheduling was ever accomplished and your appearance was expected, if not mandated.

2. **Tardy filing of memoranda.** Also in *Moore v. S.A.I.F.,* you missed several deadlines imposed by Local Rule 220–3 (requiring response and reply memoranda to be filed within eleven days of service of non-discovery motion or response briefing).

It has also come to my attention that your tardiness is not restricted to those cases that you have before me. A review of the docket system reveals that you frequently miss deadlines imposed by the Federal Rules and the Local Rules of this court. *See Kaindl v. Goodman* (CV 92–1413–FR) (default judgment entered against state defendants for failure to timely file an answer); *Martyr v. State of Oregon* (CV 90–1086–FR) (miscellaneous tardy filings).

3. **Use of insulting language in memoranda.** Last, and perhaps most disturbing, is your use of your legal memoranda to hurl insults at opposing counsel. The Local Rules specify that briefs filed in this court are to "set forth succinctly the relevant facts and the argument of the party [sic] with supporting authorities." L.R. 220–3(d). They are not for personal attacks on opposing counsel which are designed only to fan the flames of the dispute.

I call to your attention L.R. 110–4 which requires courtesy and cooperation among counsel. Characterizing opposing counsel's case as nothing more than an effort to "soapbox in Hyde Park" is not helpful in summarizing the issues in the case and certainly

ATTACHMENT—Continued

cannot be described as "courteous." *See* "Very Rough Draft" of State Defendants' Reply Memorandum (faxed to the court on Friday, August 20, 1993 at 4:27 p.m.).

This court prides itself on being one of the friendliest, most respected, and most efficient in the country. The type of behavior which you have displayed can only serve to slow and make less pleasant the task of resolving legitimate legal disputes. I certainly hope that the above incidents are inadvertent and will cease immediately.

/S/ Very truly yours

/S/ George B. Juba

/S/ GEORGE B. JUBA

C.C.

Chief Judge James A Redden

United States District Court

612  U.S. Courthouse

620  S.W. Main

Portland, Oregon 97205

Hon. Ted Kulongoski

Attorney General for the State of Oregon

Oregon Department of Justice

100  Justice Building

Salem, Oregon 97310